The Shepherd's Fold of the Protestant Church in the State of New York, Appellant, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

The provision of the State Constitution (Art. 8, § 10), prohibiting, with certain exceptions, the giving or loaning of the money of the State "to or in aid of any association, corporation or private undertaking," has reference to money raised by general taxation throughout the State, or revenues of the State, or moneys otherwise belonging to the State treasury or payable out of it. The fact that money is raised by local taxation by the supervisors of a county, pursuant to an act of the legislature, does not make it money of the State.

The objects of the plaintiff's corporation are to receive and adopt, keep, support and educate orphan or friendless children, etc.; also to receive for training and education the children of poor clergymen. By chapter 775, Laws of 1868, the several magistrates of the city of New York are authorized to commit to plaintiff's charge such orphans or friendless children as may come under their jurisdiction, and the commissioners of charities and correction are authorized to transfer to it eligible orphans and friendless children. By chapter 269, Laws of 1871 (§ 1), plaintiff is authorized, with the approval of said commissioners, the surrogate or the mayor, to place at service children so committed to its charge, and the board of supervisors is required to levy and collect, by tax upon the taxable property of the city and county, $5,000 annually, and pay the same to plaintiff, "to be applied to the purposes and objects of said corporation." In an action brought to recover payments so required to be made, *held*, that this requirement was not abrogated by said

constitutional provision, nor is it violative of the clause of the Constitution (Art. 8, § 11), prohibiting counties and cities from giving their moneys in aid of any individual, association or corporation, for the support of their poor " as may be authorized by law "; that caring for the poor of the city through the instrumentality of private corporations was not prohibited, and the legislature had power to authorize the city to provide for the burden assumed by plaintiff and cast upon it by the act of 1868 by payment of a gross annual sum; nor was it essential to the validity of the appropriation that the corporation to whom payment was authorized should be one whose corporate powers were restricted to the receipt and support of city and county poor.

Plaintiff claimed to recover the annual payments so authorized, for five years. It appeared that for two of those years no tax had been levied to raise the sum required; also that during two other years plaintiff wholly suspended its operations, and was not in a condition to, and did not receive any destitute children, so authorized to be committed, to its charge. *Held*, that it was not entitled to recover for those years.

It appeared that the persons who were acting as plaintiff's trustees during the year for which it was held entitled to recover were, in an action of *quo warranto*, brought by the present trustees, adjudged not to be entitled to the office. *Held*, that plaintiff was not prevented from claiming the benefit of operations carried on in its name and behalf; and that in this action it had ratified and adopted them.

(Argued March 21, 1884; decided June 3, 1884.)

Appeal from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made November 9, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover the annual payments of $5,000 for the years 1875, 1876, 1877, 1878 and 1879, authorized by section 3, chapter 269, Laws of 1871.

The material facts are stated in the opinion.

*A. J. Vanderpoel* for appellant. The provisions of the act of 1871 (Chap. 269) do not conflict with sections 10 and 11 of article 8 of the Constitution, prohibiting the giving of "the money of the State * * * to or in aid of any association," etc. (*Trustees Exempt F. B. Fund* v. *Roome*, 93 N. Y. 313.)

The care and support of the poor is a necessary duty of organized government. (*Milwaukee Ind. School* v. *Sup.*, 41 Wis. 328; 22 Am. Rep. 704.) Juvenile delinquents are children committed to some care by the magistrates appointed by the law-making power. (*People* v. *Park*, 41 N. Y. 29 ; 1 Lans. 263; Penal Code, § 713; Laws of 1857, chap. 61; Laws of 1875, chap. 173 ; Laws of 1833, p. 13; Wade's Poor Laws, 46, 47, 48, 221, 226, 227, 234.) The money appropriated by the act of 1871 is city and county money. (Laws of 1828, chaps. 3, 8; Laws of 1829, chaps. 23, 97, 103, 141, 149, 177, 200, 227, 250, 299 ; Laws of 1830, chaps. 14, 89, 122, 139, 182, 195, 226, 251; Laws of 1831, chaps. 12, 85, 186 ; Laws of 1832, chaps. 54, 65, 144, 183, 255 ; Laws of 1833, chaps 11, 48, 78 ; Laws of 1834, chaps. 29, 63, 115, 118 ; Laws of 1835, chap. 88 ; Laws of 1836, chaps. 89, 95, 226, 228; Laws of 1837, chap. 100 ; Laws of 1838, chaps. 76, 82; Laws of 1839, chaps. 13, 200, 251, 357 ; *People* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 419 ; *Town of Guilford* v. *Sup'vrs of Chenango*, 13 id. 143 ; *Brewster* v. *City of Syracuse*, 19 id. 116 ; *Leggett* v. *Hunter*, id. 463 ; *B'k of Chenango* v. *Brown*, 26 id. 467 ; *Darlington* v. *Mayor*, 31 id. 164; *Gordon* v. *Cornes*, 47 id. 608; *People, ex rel. McSpedon*, v. *Hawes*, 12 Abb. 204; *Fire Dept.* v. *Noble*, 3 E. D. Smith, 440 ; *McCullock* v. *Maryland*, 4 Wheat. 428 ; *Newman* v. *Sup'vrs of Livingston*, 45 N. Y. 376; *B'k of Commonwealth* v. *Mayor, etc.*, 43 id. 184.) The fact that the money was levied under the State law does not affect the liability of the city. (*Appleton* v. *Water Comm'rs*, 2 Hill, 432; *Sage* v. *City of Brooklyn*, 8 Abb. N. C. 279; affirmed, 89 N. Y. 189 ; *People* v. *Ingersoll*, 58 id. 1; *People* v. *Field*, id. 491 ; *Weisner* v. *City of Douglass*, 64 id. 94 ; *People, ex rel. Murphy*, v. *Kelly*, 76 id. 473.) Since the passage of the constitutional amendment, various acts have been passed providing for the payment of money to different institutions. (Laws of 1877, chap. 43; Laws of 1875, chap. 213 ; Laws of 1876, chap. 215 ; Laws of 1877, chaps. 90, 101, 378; Laws of 1882, chap. 236.) The practical interpretation which the action of the legislature, of the departments and

of the tax payer, places upon the Constitution, has great weight in the judicial interpretation of it. (*People, ex rel. Williams,* v. *Dayton,* 55 N. Y. 369.) Every intendment and reasonable construction is to be adopted by the court in favor of the constitutionality of a law. (*Ex parte McCollum,* 1 Cow. 450; *Cochran* v. *Van Surlay,* 20 Wend. 365; *Newell* v. *People,* 7 N. Y. 109; *People* v. *Sup'vrs of Orange,* 17 id. 235; *People, ex rel. City of Rochester,* v. *Briggs,* 50 id. 553.) This law being upon the statute book, the magistrates in the city having committed children to this institution, and the city having inserted the provision for its support in the tax levy, received the money from the tax payers for the purpose of paying it over in the years of 1875, 1876 and 1877; for those years it is estopped from questioning the constitutionality of the law, and the right of the plaintiff to receive the money. (*People, ex rel. Martin,* v. *Brown,* 55 N. Y. 180.) It was error to admit evidence under plaintiff's exception to show that the society had suspended work for the years of 1875 and 1876. (Angell & Ames on Corp., § 777 [1st ed.]; *Mickles* v. *Roch. City B'k,* 11 Paige, 118; *Trustees of Vernon Soc.* v. *Hills,* 6 Cow. 23; *Bradt* v. *Benedict,* 17 N. Y. 93; 3 Abb. N. C. 301; *State* v. *B'k of Mid.,* 6 G. & J. 205; *Boston Glass Co.* v. *Langdon,* 24 Pick. 49; *Rollins* v. *Clay,* 33 Me. 132; *People, ex rel. Kelly,* v. *Murphy,* 76 N. Y. 492.)

*Charles E. Miller* for respondent. The moneys to be raised under the act of 1871 were not State moneys. (1 R. S., chap. 9, part 1, title 1; *People* v. *Supervisors of Orange,* 17 N. Y. 235; *People* v. *Home Ins. Co.,* 92 id. 328; *In re Tax Payers of Kingston,* 40 How. 444; *Darlington* v. *Mayor, etc.,* 31 N. Y. 164, 189; *People* v. *Dayton,* 55 id. 367; *People* v. *Havemeyer,* 67 How. Pr. 494, 572.) Assuming that the moneys raised under the acts of 1871 were not to be used for the purposes of the city of New York, but for the purposes of the State, they nevertheless retained their character as city, and did not become State moneys. (1 R. S. 95, 190, § 5; Const., art. 8, § 9; *B'k of Rome* v. *Vil. of Rome,* 18 N. Y.

38.) The exclusive ownership by the city or county of money raised under legislative authority has been recognized by this court. (*People* v. *Ingersoll*, 58 N. Y. 1, 13, 20, 29, 31, 32, 34, 35.) A statute authorizing a tax by the city in aid and support of its poor is constitutional. (Const., art. 8, § 11; *Darlington* v. *Mayor*, 31 N. Y. 164; Dillon on Mun. Corp., chap. 4, § 10; *People* v. *Flagg*, 46 N. Y. 401, 405; Montgomery Charter, Valentine's Laws, 231, §§ 22, 23; *People* v. *Supervisors of Kings Co.*, 52 N. Y. 556.)

*Thomas Allison* for respondent. Money raised as directed by the act of 1871 would be city or county money, and not State money. (*People* v. *Supervisors*, 82 N. Y. 473, 475; *Ingersoll Case*, 58 id. 1; *Field's Case*, id. 491, 507, 508, 510.) This court will take judicial notice of the fact that moneys authorized to be raised by taxation in New York city are in fact raised upon revenue bonds of the city, redeemable out of the taxes when collected. (Charter of 1873, Laws of 1873, chap. 335, § 105; Laws of 1874, chap. 147, § 1; Consolidation Act, Laws of 1882, chap. 410, §§ 153, 154.) Money raised by municipal officers by local taxes or bonds, in pursuance of legislative authority, which is not to be paid over to the State treasury or State officers, is municipal money. (*People* v. *Supervisors*, 82 N. Y. 473, 475; *Sage* v. *City of Brooklyn*, 89 id. 189, 198, 200; *People* v. *Clark*, 53 Barb. 177; *People* v. *Miner*, 2 Lans. 396, 397.) If it be true that this money, when raised, would be city or county money, the Constitution prohibits the giving of it after January 1, 1875, for the purpose mentioned in chapter 269 of the Laws of 1871. (Constitution, art. 8, §§ 10, 11.) The persons, within the meaning of the words, "its poor," as used in the Constitution, are those who are properly a county charge — resident paupers; those for whom the county or city would, by law, be bound to care in its alms-house and hospitals. (2 Greenl. Laws, chap. 62, pp. 133, 134; 1 R. S. 279, chap. 78; 1 R. S. [Edm. ed.] 568, § 14; 1 R. S., part 1, chap. 20; 1 Edm. ed. 564; 3 R. S. [Edm. ed.] 331, 333, § 4, subd. 10; 4

R. S. [Edm. ed.] 1–17; Laws of 1848, chap. 176.) The words, " city or county poor," do not include many of the classes of persons whose aid or support its articles of associa-tion declare to be among the " purposes and objects " of plaintiff. (Laws of 1871, chap. 269.) There is no statutory provision, nor is there any principle of law making the city liable for the non-performance by the supervisors or any other officers, of duties which they are to perform by statutory direc-tion, not as officers or agents of the city or county, and not in performance or discharge of city or county duties, liabilities or debts, but merely as State agents. (*Maximilian* v. *Mayor*, 72 N. Y. 160 ; *Ham* v. *Mayor*, 70 id. 459 ; *N. Y. & B. S. M. & L. Co.* v. *Brooklyn*, 71 id. 580, 584 ; *Matter of Rogers*, id. 5 ; *Tone* v. *Mayor*, 72 id. 157, 165, 166 ; *Miller* v. *Mayor*, 76 id. 151.) If the act of 1871 be unconstitutional, then the fact that the money was raised as by said act provided, for the years of 1875, 1876 and 1877, does not entitle the plaintiff to recover for either of those years. (*Field's Case*, 58 N. Y. 491 ; *Newman* v. *Sup'vrs of Liv. Co.*, 45 id. 676, 682 ; *B'k of Commonw.* v. *Mayor*, 43 id. 184 ; *B'k of Che-mung* v *City of Elmira*, 53 id. 49.) A proceeding by *man-damus* is the only remedy of the plaintiff in this action, if it have any, in case the money in question herein, when raised, is State money, and the board of supervisors, etc., merely State agents in raising it, to-wit : a proceeding against the officer charged by statute with a special duty which he is to perform, not on behalf of the city, but as a mere statutory duty as a mere agent and officer authorized and directed by statute. (*First Nat. B'k* v. *Wheeler*, 72 N. Y. 201, 205, 206 ; *People, ex rel. Martin*, v *Brown*, 55 id. 180, 186, 187.) The purposes and objects for which plaintiff was organized, and for which the money was given to it were not, at any time be-tween the spring of 1874 and June, 1880, carried on by any per-sons lawfully representing or exercising the functions or corpo-rate powers of the plaintiff. (*People* v. *Twaddel*, 18 Hun, 427.) The purposes of the gift of the money, or its use, were not re-stricted to the support of the city poor, or the support of

juvenile delinquents, and, if it be city money, it could not be given for the latter purpose. (*Trustees Ex. F. B. F.* v. *Roome,* 93 N. Y. 313, 327.) No length of usage can enlarge legislative power, and a wise constitutional provision should not be broken down by frequent violations. (*People* v. *Allen,* 42 N. Y. 378.)

Rapallo, J.  The decision of the General Term is placed wholly on the ground that the money authorized to be raised by the act of 1871 (Chap. 269, § 3) was money of the State, and that consequently the constitutional amendment of 1874 (Art. 8, § 10) abrogated the authority granted to the supervisors of the county of New York to raise such money by tax and to pay it over to the plaintiff. The conclusion reached is, that the money was illegally raised; that the direction to pay it to the plaintiff became void, being in violation of the fundamental law, and, therefore, no action could be maintained by the plaintiff for any part thereof.

The constitutional provision relied upon is in the following words: "Neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation, or private undertaking. This section shall not, however, prevent the legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as it may deem proper. Nor shall it apply to any fund or property now held or which may hereafter be held by the State for educational purposes."

The section of the act of 1871 which is supposed to be in conflict with this constitutional provision is as follows: "Section 3. The board of supervisors of the county of New York shall in the year 1871, and each and every year thereafter, levy and collect by a tax upon the taxable property of the city and county of New York, to be levied and collected at the same time and in the same manner as the contingent charges and expenses of the said city and county are levied and collected, the sum of $5,000, and pay the same over to the said corpora-

tion (the plaintiff) to be applied to the purposes and objects of the said corporation."

The objects of the corporation were to receive and adopt children and youths of both sexes between the ages of twelve months and fifteen years, who were orphans, half orphans, or otherwise friendless ; these to keep, support and educate, apprentice and place out to service, trades and schools. Also to receive children of poor clergymen for training and education, who might be deemed eligible and who should be approved by the trustees, and to receive other children and youths for education and training to such extent as in the judgment of the trustees might be expedient.

By chapter 775 of the Laws of 1868, the several magistrates of the city of New York were authorized to commit to the charge of the plaintiff such orphans and friendless children as might come under their jurisdiction, and the commissioners of the public charities and correction of said city were authorized to transfer to the plaintiff such orphans and friendless children as should be eligible, etc.

The act of 1871, before referred to, provides for placing at service the children in charge of the society, with the approval of the mayor or surrogate or one of the commissioners of public charities and correction of said city.

The first question which arises is, whether the money authorized to be raised by the supervisors to be paid over to this institution was money of the State within the meaning of section 10 of article 8 of the Constitution. It seems to us that that section had reference to money raised by general taxation throughout the State, or revenues of the State or moneys otherwise belonging in the State treasury or payable out of it (1 R. S., chap. 9, art. 1, tit. 1) and not to money raised by ordinary local taxation for local purposes, and to be disbursed by the local authorities. The Constitution itself in article 8 recognizes the distinction between the two classes of funds. Section 10 impliedly permits the application of State money to corporations or private institutions, for the benefit of the blind, the deaf and dumb, and juvenile delinquents, making an exception

from the general prohibition, in favor of those objects, but making no such exception in favor of private or local institutions for the benefit of the poor, thus leaving that class of charities to be provided for by their respective localities; while section 11 of the same article prohibits counties, cities, towns and villages from giving any money or property, or loaning their credit in aid of any individual, association or corporation, but reserving from such prohibition such provision for the support of the poor of the locality, as may be authorized by law. County money as well as State money is raised by taxation under authority of the legislature, yet by a comparison of these two sections of the Constitution, we see that they are not put on the same footing. And the fact that money is raised by local taxation by the supervisors of a county, pursuant to an act of the legislature, does not make it money of the State. That point was expressly adjudicated by this court in the cases of *People* v. *Ingersoll* (58 N. Y. 1), and *People* v. *Fields* (id. 491). The general scheme of the constitutional provisions referred to seems to be that the general funds of the State shall not be given to local charitable institutions, except in aid of the blind, the deaf and dumb, and juvenile delinquents, and that the poor are to be provided for in their localities; counties, cities, towns and villages being allowed to make any provision for the support of their poor which may be authorized by law. Carrying out the designated charities through the instrumentality of private corporations is not prohibited by the Constitution, but the giving away of the money either of the State or of its counties or other local divisions to individuals or private corporations, except for the designated purposes for which each is authorized to provide, is forbidden.

These observations apply to money raised in localities by the ordinary process of taxation of the inhabitants or property of the locality, to defray the local expenses. There may be cases of funds collected by local authorities for fines, penalties or licenses, under the authority of the State, which would belong to the State unless given by law to the locality. (1 R. S., chap. 9, art. 1, title 1.) But the fund now in question is of

the first-mentioned class. It was authorized to be raised by the levy and collection of a tax upon the taxable property of the city and county of New York at the same time and in the same manner as the contingent charges and expenses of the said city and county were levied and collected, and it was directed to be paid over to the plaintiff. The payments thus directed to be made were put upon the footing of city and county charges and expenses, and the right so to treat them, has its foundation in the before-cited act of 1868, which empowers the magistrates and the commissioners of charities and corrections to commit and transfer orphans and friendless children to the charge of the plaintiff, and in section 11 of article 8 of the Constitution, which exempts from the prohibition against giving county or city money to private corporations, such provisions for the support of the poor of the locality as may be authorized by law. Having the authority to commit to the charge of the plaintiff the specified class of the poor, it was no more than just that the city should make a reasonable contribution to the expenses of the plaintiff to enable it to perform the duty authorized to be assigned to it; and we, therefore, are of opinion that the act of 1871 does not fall within the prohibition of article 8, section 10 of the Constitution, and was not abrogated by the adoption of that section in 1874.

The learned counsel for the city does not argue in support of the position taken by the General Term of the court below, but, on the contrary, concedes that the money in question was not money of the State. He contends, however, that it was city money, and that the appropriation of it to the plaintiff was a gift of city money prohibited by section 11 of article 8 of the Constitution. He expressly concedes, for the purposes on this appeal, the power of the city to make provision for the support of its poor through the medium of a private corporation, but denies that the appropriation in question was a provision for the support of city or county poor, because the money was given to the plaintiff "to be applied to the purposes and objects of said corporation," and these included other

purposes besides the support of city or county poor, viz., the education of the children of poor clergymen, and other children whom the trustees might deem it expedient to receive.

We do not think this objection necessarily fatal. The main corporate purpose was to support orphans and other friendless children, and by the act of 1868 the magistrates and commissioners of charities of the city were empowered to place destitute children in the care of the plaintiff, and we think that the legislature had power to authorize the city to provide for the burden assumed by the plaintiff and that which might be cast upon it under the act of 1868 by a payment of a gross annual sum, instead of keeping a separate account of the expense of supporting each child who might be committed or transferred, under that act, or of each destitute child, living in the city, who might be received by the plaintiff and who otherwise would have become a county charge. It was a matter of legislative discretion to determine how the expense of these children should be provided for, or how the plaintiff should be compensated for bearing the part of the public burden which it assumed. The gross compensation, when paid to the plaintiff, would necessarily become its property and applicable to its general corporate purposes, and we do not think it essential to the validity of such an appropriation of city money, that the corporation to whom the payment is authorized should be one whose corporate powers are restricted to the receipt and support of city or county poor.

This action is brought to recover the annual payment of $5,000 for each of the years 1875, 1876, 1877, 1878, and 1879. As to the years 1878 and 1879, we think that the court below was right in holding that this action could not be maintained, the money not having been raised by tax during those years. If the plaintiff had any remedy for those years, it must be sought in some different form. But in the years 1875, 1876, and 1877 the money was raised and is presumably in the treasury to meet the appropriation thereof in favor of the plaintiff made by the act of 1871.

During the years 1875 and 1876 it appears that the plaintiff

wholly suspended its operations, and did not receive and was not in a condition to receive or care for any of the destitute children authorized to be received by it or to be committed to its charge. On this ground we think the court was justified in disallowing the claim for those years. A payment of the fund to the plaintiff while it was in that condition, would have been without any equivalent, and a simple gift of the money to the institution, which would come within the constitutional prohibition, whether the money be regarded as State, or city or county money.

But during the year 1877, it appears that the plaintiff resumed its operations. There is testimony to the effect that in that year it raised funds by private subscriptions, rented a house, and filled it with children; that the magistrates of the city made commitments of children to the institution, and that the children committed to it had been taken care of ever since.

On the first trial of this action before VAN BRUNT, J., and a jury, the court directed a verdict for the plaintiff for $5,000, the amount of the appropriation for 1877. On appeal to the General Term that judgment was reversed on the ground that the act of 1871 was in effect a gift of money of the State. On the second trial the court directed a verdict for the defendant. For the reasons stated, we think that a recovery for the appropriation of 1877 could have been sustained, and that the direction to render a verdict for the defendant was erroneous.

The respondent seeks to sustain the direction on the ground that the duties performed in 1877 were not performed by the plaintiff, but by persons who had usurped the office of trustees of the plaintiff, and who were thereafter adjudged, in a proceeding by the State by *quo warranto*, not entitled to the office of trustees.

The testimony before referred to established *prima facie* that the operations of 1877, beginning in March of that year, were those of the plaintiff. The plaintiff in this action ratifies and adopts them, and claims the benefit of them, and all that appears in the case to the contrary is an admission of the plaintiff's counsel that an action of *quo warranto* was brought

on behalf of the present trustees, claiming to be the lawful officers elected by the institution, against those who were elected in March, 1877, and that the plaintiffs succeeded in that action on the claim made by them.

All that this admission discloses is that the operations carried on in 1877 were performed in the name and behalf of the plaintiff by persons claiming to be its duly elected trustees, but that afterward, on a contest as to the election, the present incumbents prevailed. These facts are not sufficient to render invalid the acts done by those in control of the corporation pending the contest, or to preclude the plaintiff in its corporate capacity from claiming the benefit of those acts.

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.