## BENNETT *v.* CITY OF LaGRANGE *et al.*

1. Under the constitution of this State no money can be taken from the public treasury, directly or indirectly, in aid of any church, sect, or denomination of religionists, or any sectarian institution. Under this provision municipalities can not expend moneys in their treasuries for any of the purposes therein designated.

2. The Salvation Army is a corporation, chartered under the laws of the State of New York, "for the spiritual, moral, and physical reformation of the working classes; for the reclamation of the vicious, criminal, dissolute, and degraded; for visitation among the poor and lowly and sick; for the preaching of the gospel and the dissemination of Christian truth by means of open-air and indoor meetings," and is a sectarian institution within the meaning of the above provision of the constitution of this State.

3. The ordinance or resolution of the city council of LaGrange, providing

that "the city enter into a contract with the commanding officer of the local detachment of the Salvation Army, specifying that the charity work of the city would be assumed by them, not to exceed $75 per month, the Salvation Army to render itemized bills each month for this work, and that the mayor be authorized to sign said contract," is in conflict with article 1, section 1, paragraph 14, of the constitution of this State, which is set out in the above headnote, and is unconstitutional and void.

4. The payment of money by the City of LaGrange from its treasury to the Salvation Army, under the above resolution, and the contract entered into thereunder between the City and the Salvation Army, by which the latter assumes the charity work of the city, is the taking of money from the public treasury of the city, directly or indirectly, in aid of a sectarian institution, in violation of the above constitutional provision; and the same can be enjoined by any taxpayer of that city.

5. The court below erred in refusing to grant an injunction as prayed by the plaintiff.

No. 2794. MAY 15, 1922.

Petition for injunction. Before Judge Roop. Troup superior court. August 3, 1921.

J. P. Bennett, a citizen and taxpayer of the City of LaGrange, filed his petition for injunction against said city, D. A. Leman, its clerk and treasurer, and the Salvation Army, and made this case: On May 2, 1921, the mayor and councilmen of the City of LaGrange passed a resolution donating seventy-five dollars per month toward the expenses of the Salvation Army's local detachment, provided the board of commissioners would donate a like sum. On June 8 the mayor and councilmen of this city rescinded this resolution, and substituted in its place a resolution "that the city enter into a contract with the commanding officer of the local detachment of the Salvation Army, specifying that the charity work of the city would be assumed by them, not to exceed $75.00 per month, the Salvation Army to render itemized bills each month for this work, and that the mayor be authorized to sign such contract when drawn." On June 17, 1921, in pursuance of this resolution, the City of LaGrange and the Salvation Army entered into this contract:

"Georgia, Troup County. This agreement between the City of LaGrange and the Salvation Army, witnesseth: That the Salvation Army agrees that it will handle charitable cases for the City of LaGrange at the actual cost of such services, and will render to the City of LaGrange monthly itemized statements of expenses incurred in handling such cases. The City of LaGrange agrees to pay

to the Salvation Army expenses incurred in handling such cases as above rendered, but not to exceed the sum of seventy-five dollars ($75.00) per month. Signed in duplicate, this 17 day of June, 1921. City of LaGrange, by S. H. Dunson, Mayor. Salvation Army, by S. J. Bivans."

Under this contract the city is paying money to the Salvation Army's local detachment each month. Bennett alleged that this resolution and contract violates article 1, section 1, paragraph 14, of the constitution of this State, and sought to enjoin the city from paying over funds from its treasury to the Salvation Army under said resolution and contract, on this ground. The Salvation Army is a New York corporation; and its charter declares that its general objects and purposes are as follows: " To have the custody and control of all the temporalities and property, real and personal, belonging to the Salvation Army in the United States, and revenues therefrom, and the administration of the same in accordance with the discipline, rules and usages of the Salvation Army. To see that the entire receipts, revenues, and emoluments derived therefrom and from all the various branches of its work are devoted exclusively to the benevolent, religious, and philanthropic purposes of the Salvation Army in the United States, with the exception of a moderate and reasonable compensation to those conducting and having the management of its objects and purposes. For the spiritual, moral, and physical reformation of the working classes; for the reclamation of the vicious, criminal, dissolute, and degraded; for visitation among the poor and lowly and sick; for the preaching of the gospel and the dissemination of Christian truth by means of open-air and indoor meetings."

The defendants filed separate special demurrers to the plaintiff's petition, which will not be considered, as their consideration is unnecessary to the determination of the real question in issue. The City of LaGrange filed its answer admitting the passage and rescission of the resolution of May 2, 1921, and the passage of the resolution of May 8, 1921, hereinbefore referred to. It denied that the Salvation Army is a religious organization organized under the laws of the State of New York for the purpose of preaching the gospel and the dissemination of Christian faith, that it is a denomination of religionists and a sect, or that it comes within the purview of the above provision of the constitution of

this State. The city admits that it has paid to the Salvation Army under said contract certain moneys, and avers that said moneys have been expended only to relieve the wants and necessities of the poor and needy within the City of LaGrange. The Salvation Army filed a similar answer, and set out the extract from its charter which is quoted above. It denies that it is a denomination of religionists or a sect, and denies that it comes within the purview of this provision of the constitution of this State. It admits that the City of LaGrange has paid to its local detachment for one month the sum of seventy-five dollars on June 17, 1921, and avers that said money was paid to the Salvation Army to reimburse it for money actually spent and expended in relieving the suffering and necessities of certain poor and needy people within the City of LaGrange. A copy of the above contract is attached to the answer of the city to the petition in this case.

On the hearing H. C. Cofield and J. P. Jordan deposed, by affidavit in favor of the plaintiff, that they know of their own knowledge that the local detachment of the Salvation Army at LaGrange, Georgia, is a religious organization; that said local attachment holds religious services on the streets of LaGrange regularly, that said services are held at least two days in each week; that when said services are held a member of that organization will preach, prayer is held, there is singing, and the services are conducted in exactly the same manner as regular church services, except that they are held on the streets.

The court below denied the application for injunction, and error is assigned on this judgment.

*J. T. Thomasson, M. U. Mooty,* and *Leon L. Meadors,* for plaintiff. *Lovejoy & Mayer,* for defendants.

HINES, J. (After stating the foregoing facts.)

Paragraph 14 of section 1 of article 1 of the constitution of Georgia is as follows: " No money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect, or denomination of religionists, or of any sectarian institution." Civil Code, § 6370. Two questions arise in this case: (1) Does this provision of the constitution apply to municipalities of this State? (2) Do the resolution of the mayor and councilmen of the City of LaGrange and the contract between said city and the Salvation Army conflict with this provision? This provision is

found in the bill of rights of our State constitution. It is in section 1 of article 1, which deals with " the rights of the citizen." It undertakes to protect the citizens of this State against having money wrung from them by taxation taken or appropriated in aid of any of the institutions therein mentioned. This provision is not found in article 3, creating the legislative department and defining the powers of the legislature. It is not found in article 4, which deals with the power of the General Assembly over taxation. It is not incorporated in article 7, which deals with " finance, taxation, and public debt." As above stated, it is incorporated in section 1, of article 1, which deals with the rights of the citizen, and throws safeguards around them. This provision makes no reference to the State treasury otherwise than as it may be embraced in the language, " public treasury." It makes no reference to the State government. It does not prohibit the State government, or any department thereof, or the government of any local subdivision of the State, by name, from taking money from the public treasury, directly or indirectly, in aid of any of the institutions mentioned in this constitutional provision. The language used can apply as well to one treasury as to another, or as well to all of them as to any one of them. To say that the people intended to prohibit the legislature appropriating State funds to these institutions, but at the same time left the counties and municipalities of the State free to make such appropriations of public moneys from their treasuries, seems to us to put an unreasonable construction upon this provision. It is more reasonable to hold that the purpose was to protect every treasury in this State from such appropriations of public funds.

Where a similar constitutional provision has reference only to money raised by general taxation throughout the State, or revenues of the State, or moneys otherwise belonging in the State treasury, such provision does not apply to a subordinate division of the State, such as a municipality. Shepherd's Fold of Protestant Church v. New York, 96 N. Y. 137; In re House, 23 Colo. 87 (46 Pac. 117, 33 L. R. A. 832). But the constitutional provision under consideration makes no direct reference to money of the State, raised by taxation, or other funds in its treasury, otherwise than as is implied in the words " public treasury." This language is equally applicable to a county treasury or a municipal treasury.

The State treasury is a public treasury. The county treasury is a public treasury. The municipal treasury is a public treasury. The funds of each are derived from taxation of the citizens of the State, county, or municipality. This section of the constitution prohibits the taking of money from any of these treasuries, in aid of any of the institutions therein mentioned. We are therefore of the opinion that this provision of the State constitution is applicable to the municipalities of this State.

Is the Salvation Army a sectarian institution? A religious sect is a body or number of persons, united in tenets, but constituting a distinct organization or party, holding sentiments or doctrines different from those of other sects of people. In the sense intended in the constitution every sect of that character is sectarian, and all members thereof are sectarians. State v. Hallock, 16 Nev. 373. A religious sect or denomination is one having a common system of faith. State v. Township 9, 7 Ohio St. 58. The term "church" is one of very comprehensive signification, and imports an organization for religious purposes, for the public worship of God. 11 C. J. 762. The Salvation Army is a benevolent and religious institution. It is likewise a church on wheels. It has the custody and control of all the temporalities and property belonging to the Salvation Army in the United States, and the revenues therefrom. It administers these revenues in accordance with its discipline, rules, and usages. Its entire receipts, revenues, and emoluments are devoted exclusively to its benevolent and philanthropic purposes, with the exception of a moderate and reasonable compensation to those conducting and managing its affairs. Its work is primarily directed to the spiritual, moral, and physical reformation of the working classes, to the reclamation of the vicious, criminal, dissolute, and degraded, to visitation among the poor, lowly, and sick, and to the preaching of the gospel and the dissemination of Christian truth by means of open-air and indoor meetings. So it preaches the gospel. It disseminates Christian truth. It is a church, a sect, and a religious institution. It is sectarian in that it preaches the gospel of Christ, and undertakes to disseminate Christian truth, in all probability the pecular doctrines and tenets of some branch of Protestantism, in preference to Catholicism, the doctrines of the Jewish religion, Mohammedanism, and the various other religions of the world. The fact that

28

it undertakes to disseminate Christian truth, which many people believe to be the highest and holiest form of religion, does not render it unsectarian. The fact that the Salvation Army undertakes to reform the working classes, to reclaim the vicious, criminal, dissolute, and degraded, to visit the poor, lowly, and sick, which is " pure religion and undefiled before God," and the highest form of benevolence, does not free it from being a sectarian institution. Being such, no money can be taken directly or indirectly from the public treasury to aid it in these benevolent objects and purposes.

But it is insisted that the mayor and council of said city have full power and authority to pass all by-laws and ordinances respecting the care of the poor (Ga. Laws 1901, p. 491, § 39), that in consequence of such power they can contract with a third person for the support of the paupers of that city (30 Cyc. 1145), and that the city can perform this duty in every reasonable way, and by the use of all reasonable means. Town of Hamden *v.* City of New Haven, 91 Conn. 589 (101 Atl. 11, 3 A. L. R. 1435). This general proposition is true; but in making contracts for the care of its poor the City of LaGrange must refrain from violating this provision of our state constitution. The exercise of its power to contract must be within bounds which do not infract this section of the constitution.

Does the contract between the City of LaGrange and the Salvation Army amount to aid to the latter in the discharge of its benevolent and religious purposes? It is insisted that the Salvation Army is only paid the actual amounts expended by it in taking care of the poor of LaGrange, and then only to an amount not exceeding seventy-five dollars per month, and that payments are made to the Army or its local detachment only upon itemized bills for services so rendered by it. The constitution of South Dakota provides that " no money or property of the State shall be given or appropriated for the benefit of any sectarian or religious society or institution." The constitution of that State further provides that " no appropriation of lands, money, or credits to aid any sectarian school shall ever be made by the State, or any county or municipality within the State." By a law of that State the territorial board of education was authorized to designate private universities, colleges, and academies in which instruction should be

given to pupils in the methods of teaching; and in pursuance of this law the board of education contracted with Pierre University, a Presbyterian institution, for the instruction of a class of students in pedagogy. The Supreme Court of South Dakota held that the prohibition in the constitution of that State against the appropriation of money or other property to aid any sectarian school applied to all appropriations to such schools, whether made as a donation or in payment for services rendered the State by such school; and that the contract between the board of education and this Presbyterian university was void because in conflict with the above provision of the constitution of that State. Synod of Dakota v. State of South Dakota, 2 S. D. 366 (50 N. W. 632, 14 L. R. A. 418). A school connected with an orphan asylum controlled by officers of the latter who were Sisters of Charity of the Roman Catholic Church in which religious instruction is given to Roman Catholic children is a sectarian institution within the constitutional provision against using public funds for "sectarian purposes." State v. Hallock, 16 Nev. 373. The inhibition of section 3, article 8, of the Illinois constitution, against any payment from public funds in aid of any sectarian institution prohibits payment by Cook County for the tuition and maintenance of dependent girls, committed by the county court, under the law of that State, to the Chicago Industrial School for Girls, a corporation which places the girls committed to it in certain institutions under the control of the Roman Catholic Church, and to which institution such payments would in fact go. Cook County v. Chicago Industrial Schools for Girls, 125 Ill. 540 (18 N. E. 183, 1 L. R. A. 437, 8 Am. St. R. 386). In the case last cited the Supreme Court of Illinois held that "money paid to a school in consideration for services rendered, and not as a mere gratuity, is none the less an aid to the school, and is therefore within the constitutional inhibition against the use of public funds to aid sectarian schools."

Counsel for defendants in error strongly rely upon the case of Dunn v. Chicago Industrial School for Girls, 280 Ill. 613 (117 N. E. 735, L. R. A. 1918B, 207), in which the Supreme Court of Illinois held that "the payment to the Chicago Industrial School for Girls, an incorporated Catholic school (under the control and management of the Roman Catholic Church), by Cook County, of an amount less than the actual cost of clothing, medical care, and

attention, and education and training in useful arts and domestic science for the maintenance, etc., of Catholic girls, committed thereto by the juvenile court act, . . is not in violation of the provision of the Illinois constitution which prohibits 'any appropriation or payment, from any public fund whatever, of anything in aid of any church, or sectarian purpose.' " We can not agree with the conclusion reached by the Supreme Court of Illinois in this case. The argument by which the court reached its conclusion therein is not satisfactory. This argument is based on the facts that in the preamble to the constitution of Illinois expression is given to the gratitude of its people for the religious liberty which they had been permitted to enjoy, that the constitution of Illinois declared for the " free exercise and enjoyment of religious profession and worship, without discrimination," and that that constitution provided that property used exclusively for religious purposes may be exempted from the burden of taxation. The court further says that the people of that State not only did not declare hostility to religion, but regarded its teachings and practices as a public benefit, which might be equaled to the payment of taxes. The court further says that it was not the intention of the constitution that institutions to which wards of the State might be committed should be absolutely divorced from religion or religious teaching. The court further put its decision upon the ground that this school received less than the cost of the training of the girls committed to its care, and therefore it did not amount to giving aid to the school. The court likewise undertook to distinguish the case it then had under consideration from that of the County of Cook *v.* Chicago Industrial School for Girls, supra. The distinction drawn between the two cases is that it did not appear in the former case that the school was getting less than the cost of the service it rendered to the County of Cook.

The reasoning of the Supreme Court of Illinois in Dunn *v.* Chicago Industrial School for Girls, supra, does not appeal to us. It is true that the constitution of Illinois does not declare hostility to religion. So the constitution of Georgia does not declare hostility to religion. The constitution of Illinois declares in favor of religious liberty; so does the constitution of Georgia. The constitution of Illinois exempts property used for religious purposes from taxation. So does the constitution of Georgia. But both con-

stitutions declare against giving aid to sectarian schools and institutions. When the State selects a sectarian institution of learning, and commits to such institution its wards, for whose maintenance and education it pays, it gives the most substantial aid to such an institution. On the same principle the State could undertake to educate all its children in such sectarian institution, and pay them for the education of its children in such institutions rather than in public schools and public institutions of learning. Any such course would be giving the most valuable aid to such sectarian schools and institutions.

So when the City of LaGrange made the contract with the Salvation Army, by which the latter, a sectarian institution, assumed the care of the poor of that city, although at actual cost, this was giving a great advantage and the most substantial aid to the Salvation Army in the prosecution of its benevolent and religious purposes. The giving of loaves and fishes is a powerful instrumentality in the successful prosecution of the work of a sectarian institution. So we are of the opinion that the taking of money from the public treasury of the City of LaGrange, in payment to the Salvation Army for its care of the poor of that city, amounts to the taking of money from its treasury, directly and indirectly, in aid of this sectarian institution, in violation of this provison of the constitution of Georgia. So we are of the opinion that the court erred in refusing to grant an injunction restraining the execution of the contract between the city and the Salvation Army; and the judgment of the lower court is therefore

*Reversed. All the Justices concur, except*

Beck, P. J., dissenting. Being of the opinion that the contract made by the City of LaGrange with the Salvation Army to perform the services contemplated in the contract in question was not in aid of the other contracting party in the sense in which the term aid is used in the constitution, I dissent from the judgment of the. majority.