702 So.2d 572 (1997)
CAMPUS CRUSADE FOR CHRIST, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellees.
No. 97-86.
District Court of Appeal of Florida, Fifth District.
November 21, 1997.
Rehearing Denied December 18, 1997.
*573 R. Lee Bennett and G. Robertson Dilg of Gray, Harris & Robinson, P.A., Orlando, for Appellant.
John D. Maher, Tallahassee, for Appellee Unemployment Appeals Commission.
Christopher C. Skambis of Moran & Shams, P.A., Orlando, for Appellee Daniel A. Hill.
COBB, Judge.
Campus Crusade for Christ, Inc. [employer], appeals from a final order of the Unemployment Appeals Commission (UAC) affirming the appeals referee's determination that the claimant, Daniel Hill, worked for the employer in insured employment and the employer did not meet any exemption from liability for unemployment compensation benefits.
The claimant was employed by the employer as a payroll clerk in its Orlando, Florida, office. He was discharged from that position on August 11, 1995. The claimant then filed a claim for unemployment benefits with the State, Department of Labor and Employment Security, Division of Unemployment Compensation. The employer responded by presenting evidence that it was recognized by the State of California as a church and thus exempt from the provisions of that state's unemployment insurance code. The employer requested the same exemption pursuant to section 443.036(19)(d), Florida Statutes, which provides in relevant part:

Exclusions from paragraphs (b) and (c).For the purposes of paragraphs (b) and (c), the term "employment" does not apply to service performed:
1. In the employ of:
a. A church or convention or association of churches.
b. An organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches.
The Division of Unemployment Compensation determined that the employer operates primarily for religious purposes and was excluded as an employer from coverage. The claimant appealed.
The appeals referee referred the matter to the Division's Bureau of Tax for a determination as to whether the employer was exempt as a church. The Bureau reaffirmed a previous ruling (which had involved a different claimant) that the employer is not a liable employer as per section 443.036(19)(d)1, Florida Statutes. The matter was returned to the appeals referee and a hearing was held. The appeals referee announced that he would decide whether the Bureau of Tax made a correct decision based on the evidence adduced in this case. The following testimony was then presented.
The employer is a religious missionary order created to spread the gospel of Jesus Christ to the world. It is a non-profit organization which since 1959 has enjoyed an exemption from federal taxation as a religious order. The original purpose of the organization, founded in 1951 on the campus of UCLA, was to work with college students in spreading the word of Jesus Christ. In August, 1991, the organization moved its headquarters to Orlando, Florida.
The employer is an international ministry with a worldwide staff of 13,000 and a presence in over 150 countries. It pursues its campus ministry activities at colleges and universities which include regular weekly meetings involving worship, prayer, singing and Bible studies. The meetings are open to *574 the pubic. The people conducting the meetings are trained in the doctrinal beliefs of Campus Crusade. For students away from home, these campus worship and instructional assemblies may represent their only religious affiliation. Counseling sessions are also held on college campuses.
In addition to regular meetings occurring on college campuses, the employer conducts a regular weekly meeting at its Orlando headquarters with attendance averaging some 200-300 people. These meetings, held in the main auditorium, include singing hymns, a speaker and prayer. These meetings are primarily for the people who work in the building, though members of the public are welcome. The claimant testified that as an employee he was required to attend.
From its initial focus on college students, the employer has expanded its ministry to students at other levels. It holds weekly meetings, similar to those held on college campuses, for high school students through a ministry known as "Student Venture." It also has programs for younger children. The instruction in its youth programs is similar to Sunday school type instruction including singing and Bible stories. The employer's statement of faith is consistent with the doctrinal positions of evangelical Protestant religions. Meetings are led by commissioned members of the organization. The employer is comprised of missionary staff personnel trained in the organization's doctrinal beliefs. After training in the faith, an individual must complete ministry skill training, following successful completion of which they become part of the order. The employer does not ordain ministers. The employer produces and distributes literature outlining its doctrinal beliefs.
As part of its faith, the employer believes that its members must fellowship with other Christians and requires its staff members to attend and become members of local denominational churches. The employer has historically chosen not to hold itself out as a church according to Ken Heckmann, the employer's human resource manager. Heckmann added that Campus Crusade operates "alongside some of the other organized churches to help them accomplish some of the purposes that we believe they want to do."
Campus Crusade has a president and president's cabinet which is the leadership body of the organization. Under the cabinet are heads of ministries and under these heads are people responsible for various geographic areas. Campus Crusade operates a School of Theology for those interested in obtaining graduate level instruction on theological issues.
Prior to and at the hearing before the appeals referee, the employer's counsel raised the issue of misconduct asserting that in the event the referee found the employer is not exempt, the employer should be allowed to present evidence of misconduct. The referee announced that the issue of misconduct would not be considered at the hearing.
The appeals referee made the following findings of fact:
The employer is a non-profit religious organization with 1,300 full-time staff members and operates in 150 countries with its international headquarters in Orlando, Florida. The employer is exempt from the Federal Unemployment Tax Act and has a 501(c)(3) tax exemption as a religious and educational organization. The employer had at least four individuals in employment for some portion of a day in each of 20 different weeks during the calendar year 1995. The employer is supervised internally and has no outside church supervision. The employer receives funds from individuals and churches. The employers does not receive funds from a particular church. The funds come from different denominations. The employer is not part of a convention of group of churches. The employer commissions ministers and does not ordain them. The employer allows parsonage allowances to ministers only if they are also sanctions [sic] by a denominational church. The employer does not put itself forth to the public or other churches as a church. The employer requires workers to join a church where they minister. The employer holds weekly meetings in the auditorium at the international headquarters. The meeting requires *575 mandatory attendance from the employees and is also open to the public. The meetings are primarily for the people who work there.
The appeals referee then announced the following conclusions of law:
The law provides that a claimant shall be eligible for wage credits only if the division finds, among other things, that remuneration paid constituted wages for insured work during the base period of the claim. The record and evidence of this case show that the claimant was employed by this employer and received wages for insured work during his base period. The term "employment" includes service performed by an individual in the employ of a religious, charitable, educational or other organization if that organization is exempt from the Federal Unemployment Tax Act and has four or more individuals in employment for some portion of the day in each of 20 different weeks during the current or preceding calendar year. The employer meets this requirement. The Florida Unemployment Compensation Statute excludes employment in the employ of a church or convention or association of churches. The Florida Unemployment Compensation Statute also exempts work for an organization which is operated primarily for religious purposes in which is operated, supervised, controlled, or principally supported by a church or convention or association of churches. Chapter 443.036(19)(CD). The legislature clearly made a distinction between a church or an organization operated primarily for religious purposes. Florida Statutes make a similar exemption for churches in most chapters dealing with taxes. However, the Florida Statutes do not define what is meant by the word "church."
* * * * * *
A church is certainly more than a building with a steeple, pews, preacher, and congregation. A church is a religious idea in action. The actions of the employer, although strongly religious in nature, are not the actions of a church. The employer does not present itself to the public or other churches as a church. The employer only allows a parsonage allowance to ministers who are ordained by a denominational church. The employer requires staff members to become members of local churches where they administer. The employer is therefore not a church. The employer does not meet the statutory exemption from the unemployment compensation system as a religious organization because it is internally controlled and not supervised by a church or group of churches. The employer receives funds from churches and individual donors.
It has been shown by a preponderance of the evidence that the claimant worked for this employer in insured employment. It has not been shown that the employer meets any exemption from the term of wages in the Florida Statutes. Thus, the claimant shall receive credit for his insured work performed for this employer.
The UAC affirmed this decision and this appeal followed.
The issue before us is whether the appeal referee's decision is supported by substantial competent evidence and is consistent with the legislative intent behind the statutory exemption for a church set forth in section 443.036(19)(d), Florida Statutes (1995). See SKF Management v. Unemployment Appeals Commission, 664 So.2d 345 (Fla. 5th DCA 1995); Rosmond v. Unemployment Appeals Commission, 651 So.2d 233 (Fla. 5th DCA 1995).
We begin with the premise that the conclusions of law of an agency that construes a statute which the agency is charged to enforce, while not immune from judicial review, are entitled to great deference. SKF Management at 348. We also recognize that the exclusion of employment by a church found in subsection (19) of section 443.036 is to be narrowly construed, consistent with the beneficial purposes behind unemployment compensation. See Hummer v. Unemployment Appeals Commission, 573 So.2d 135 (Fla. 5th DCA 1991).
Under this statutory scheme, not all religious organizations are exempt from the term "employment." In other words, an employer may be a religious organization but *576 under subsection (19)(d)1. it must be a "church" or an organization operated, supervised, controlled or principally supported by a church or convention or association of churches in order to enjoy exempt status under Florida's unemployment compensation statute.
There is no definition of the word "church" in the statute or elsewhere in Chapter 443. Campus Crusade argues that it is a "church" for purposes of section 443.036(19)(d)1.a. pursuant to: (1) the dictionary definition of the word "church," (2) the definition of "church" found in Rule 12A-1.001(3)(c), Florida Administrative Code which was promulgated pursuant to Chapter 212, Florida Statutes, dealing with the collection of sales tax, (3) the Internal Revenue Service's interpretation of the term in connection with the exemption from federal income taxation, and (4) case law from other states.
Where a statute fails to define a term such as "church," it is presumed that the legislature intended that the term be given its plain, natural, ordinary meaning. Abenkay Realty Corp. v. Dade County, 185 So.2d 777 (Fla. 3d DCA 1966). As stated in State v. Tunnicliffe, 98 Fla. 731, 124 So. 279, 281 (1929):
"In the interpretation of statutes words in common use are to be construed in their natural, plain, and ordinary signification, unless it appears they were used in a technical or other sense. Southern Bell Tel. [& Tel.] Co. v. D'Alemberte, 39 Fla. 25, 21 So. 570. The Legislature is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, but simply seek to effectuate the intent of the Legislature."
As observed in First Independent Missionary Baptist Church v. McMillan, 153 So.2d 337, 342 (Fla. 2d DCA 1963), courts have defined the word "church" in the following ways:
"A body or community of Christians united under one form of government by the profession of the same faith, and the observance of the same ritual and ceremonies." (See McNeilly v. First Presbyterian Church in Brookline, 243 Mass. 331, 137 N.E. 691, 694.)
"[A]n organization for religious purposes, for the public worship of God." (Bennett v. City of LaGrange, 153 Ga. 428, 112 S.E. 482, 485, 22 A.L.R. 1312.)
"The term may denote either a society of persons who, professing Christianity, hold certain doctrines or observances which differentiate them from other like groups, and who use a common discipline, or the building in which such persons habitually assemble for public worship." (Baker v. Fales, 16 Mass. 488, 498; Tate v. Lawrence, 11 Heisk. (58 Tenn.) 503.)
What these definitions appear to have in common is the existence of a group or organization, professing a religious faith, which engages in regular public worship services. The UAC and claimant assert that Campus Crusade is merely an interdenominational missionary organization which is a religious organization but is not a church. Indeed, there was testimony below from the employer's human resource manager that the employer is not a church, but rather encourages its staff members to become members of local denominational churches.
Campus Crusade relies on several out of state decisions, including Young Life Campaign v. Patino, 122 Cal.App.3d 559, 176 Cal.Rptr. 23 (Cal.App. 3d Dist.1981) and Maumee Valley Broadcasting Ass'n v. Porterfield, 29 Ohio St.2d 95, 279 N.E.2d 863 (1972). In Patino the court held that an employer, Young Life, which engaged in bible study, conducted a non-denominational ministry and subscribed to a non-denominational Christian statement of faith was a "church" within the meaning of the unemployment insurance code.[1] Young Life had been founded by a Presbyterian minister for the purpose of supporting "a benevolent, charitable, educational and missionary undertaking, particularly to encourage Christian young people to continue their spiritual life, which shall be manifested in Bible study, prayer and consistent Christian living." Weekly meetings were conducted at private *577 homes by members of the Young Life staff (many of whom were ministers ordained by denominational churches). The board of trustees included several pastors of denominational churches and while Young Life did not ordain ministers, most of its directors were ordained by a denominational church or body. From time to time the ordained ministers administered sacraments such as communion, baptism, marriage and the Eucharist.
While Young Life has similarities with Campus Crusade, several distinctions exist. For example, most of Young Life's staff consisted of ordained ministers who administered sacraments. Note too, the appellate court in that case was reviewing a decision by the fact finder that the employer was within the statutory definition of the term "church," whereas the converse is true in the instant case.
Maumee involved the issue of exemption from sales tax and did not involve the salutary considerations underlying relief from unemployment.
The Internal Revenue Code provides an exemption from federal income taxation for a "church" but does not define the term. In the absence of legislative guidance, federal courts have indicated that the term should be interpreted according to the generally accepted meaning and usage of the word. De LaSalle Institute v. United States, 195 F.Supp. 891 (N.D.Cal.1961). The IRS utilizes 14 criteria from its rulings and court opinions to determine whether an organization is a church. See Foundation of Human Understanding v. Commissioner of Internal Revenue, 88 T.C. 1341, 1987 WL 49331 (1987). Each side in the instant case cites to these criteria in support of their position. The criteria include:
(1) a distinct legal existence (2) a recognized creed and form of worship (3) a definite and distinct ecclesiastical government (4) a formal code of doctrine and discipline (5) a distinct religious history (6) a membership not associated with any other church or denomination (7) a complete organization of ordained ministers ministering to their congregations (8) ordained ministers selected after completing prescribed courses of study (9) a literature of its own (10) established places of worship (11) regular congregations (12) regular religious services (13) Sunday schools for the religious instruction of the young (14) schools for the preparation of its ministers.
The IRS recognizes that few, if any, religious organizations will satisfy all of these criteria. See Young Life Campaign v. Patino, 176 Cal.Rptr. at 32-33.
The parties essentially disagree as to application of most of these factors to this case. While Campus Crusade has adopted an extensive statement of faith which is contained in its bylaws, the claimant and UAC contend that it is merely a distillation of commonly accepted fundamentalist Christian doctrine. Even if it is, this does not disqualify the statement of faith as a recognized creed. There is no requirement that the recognized creed be original or differ in some way from other creeds.
As to a recognized form of worship, Campus Crusade urges that its campus ministry meetings and headquarters staff meetings are worship services which follow those services conducted by Protestant churches. However, critical differences exist. Campus Crusade's meetings are not conducted by ordained ministers, they do not appear to have an established liturgy, and the sacraments, including communion, are not offered. In other words, conditions typically found in church services are missing from these meetings. Indeed, as to factors 7 and 8, Campus Crusade does not have an organization of ordained ministers, As to factor 6, Campus Crusade encourages its members to associate with local churches. As for factor 3, Campus Crusade has a distinct corporate government but whether it is in the nature of an ecclesiastical government is much less clear.
Having reviewed the statutory exemption and case law, we conclude that the definitional status of a "church," at least for purposes of an exemption from liability for payment of unemployment compensation benefits, is somewhat amorphous. While regular worship services are essential, church services contemplate the presence of an ordained ministry and the existence of an established *578 liturgy, both factors being absent here. Such factors would distinguish a church from a Bible study or prayer group and from a missionary organization. The hearing officer was presented with a close question but his (and the UAC's) narrow interpretation of the exemption found in section 443.036(19)(d)1.a. does not appear to be clearly erroneous. See SKF Management. This is especially true given the testimony of Campus Crusade's own witness, Heckmann, that the organization does not publicly promote itself as a church.
We therefore affirm and remand the cause for a determination as to whether the claimant was guilty of misconduct. The employer did raise the issue of misconduct below prior to and at the hearing, but the appeals referee refused to consider the issue at the hearing. The UAC does not dispute Campus Crusade's claim that it is entitled to such a determination.
AFFIRMED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.
HARRIS, J., and BRIGGS, D. F., Associate Judge, concur.
NOTES
[1] The language of the California exemption is identical to that found in section 443.036(19)(d)1.a. See Patino, 176 Cal.Rptr. at 24.