## THOMPSON BUILDING CO. v. OKLAHOMA TAX COMMISSION.

No. 30711. Dec. 15, 1942.

Rehearing Denied Jan. 19, 1943.

132 P. 2d 962.

Marvin T. Johnson, of Tulsa, for plaintiff in error.

F. M. Dudley, A. L. Herr, C. D. Stinchecum, and A. D. Howell, all of Oklahoma City, for defendant in error.

BAYLESS, J. This appeal by Thompson Building Company, a corporation, from a ruling of the Oklahoma Tax Commission, involves a construction of H. B. 116, S. L. 1941, page 347, 68 O. S. 1941 §§ 634-643.

Pursuant to the requirements of this act, corporation filed a return, on the basis of which it calculated a tax due of $243.75, which was tendered. Commission audited the return and, on the basis of its interpretation of the act, assessed and demanded payment of an additional $387.50.

Corporation protested and at the hearing held the only issue related to an item of real estate mortgage bonds that corporation contended should be deducted as a liability in arriving at the "value of its capital stock" and that commission contended should be included in the "Capital stock, surplus and undivided profits, plus the amount of bonds, . . . maturing four (4) years or more after issuance," in arriving at "the value of capital used." It is admitted the amount of such bonds involved is $310,-000, and the additional tax is $387.50.

Corporation contends that the Act of 1941 is but a re-enactment of chapter 155, S. L. 1933, and is to be interpreted as the 1933 Act was interpreted by this court in Southwestern L. & P. Co. v. Oklahoma Tax Commission, 178 Okla. 277, 62 P. 2d 637.

A reading of the two acts discloses significant differences. As pointed out, the 1933 Act measured the amount of license tax due by a certain rate times "each one thousand dollars, or portion thereof, of the *value of its capital stock*," and although that act required bonded indebtedness of deferred maturity to be considered, we said that the phrase "value of the capital stock" meant "book value" thereof, and this required a consideration of such indebtedness. Thus

the mandate of the statute added nothing to the formula prescribed.

The 1941 Act measures the amount of the annual license fee by "each one thousand dollars ($1,000) or portion thereof, of its capital used."

There are recognized differences between "capital," Words & Phrases (Perm. Ed.) vol. 6, p. 61, and cases cited, 18 C. J. S. 615, § 193, and 13 Am. Jur. 296, § 172, definitions, and "capital stock," Words & Phrases (Perm. Ed.) vol. 6, pp. 65, 74, and 75, and cases cited, 18 C. J. S. 614, § 193, and 13 Am. Jur. 296, § 172, definitions. If any doubt or confusion arises by reason of statements that these words or phrases are permissively used synonymously (Home B. & L. Ass'n v. State, 156 Okla. 89, 9 P. 2d 731) as well as counterterms, it is dispelled by the fact the Legislature has set up its own definition in the act. It has been seen from the cases above that the power to do this exists.

68 O. S. 1941 § 638, subsections 1 and 2, contain the definitions of the word "capital" and the term "capital stock" that are to be used in construing this act, and the subsections read:

"For the purpose of computing the amount of the annual license tax imposed upon and payable by the corporations, associations, and organizations specified in sections 2 and 3 of this Act, the word 'capital' shall be construed to include the following:

"Outstanding capital stock, surplus and undivided profits plus the amount of bonds, notes, debentures, or other evidences of indebtedness maturing four (4) years or more after issuance. The term 'capital stock' where used herein shall inclue all written evidence of interest or ownership in the control or management of a corporation."

Since the Legislature now purposes to take "the value of the capital used" as the measure, and makes "capital stock" simply one of several elements of "capital used," it is obvious that corporation's contention is wrong.

We observe from the return made by corporation, upon a form prescribed by the commission, it first sets out the amount of "outstanding capital stock" as $403,000, and then sets out other data, including the mortgage bonds mentioned above, from which the "book value" thereof is found to be $194,000. Commission does not take issue with this. We observe from the return there are no surplus or undivided profits to be added to the "outstanding capital stock," but we also observe that there are bonds maturing more than four years after issuance amounting to $310,000, and these should be added to the "outstanding capital stock" as directed by the statute to arrive at the amount of "capital used" as intended by the statutory definition.

Corporation asks, What is the use of using the bonds as a liability in valuing the "capital stock," and then adding the same amount thereto in arriving at the value of "capital used"? The answer is, the Legislature very plainly directed that it be done. The judicial function is fully exercised when the formula prescribed is sought out and made plain, and it is no part thereof to seek the reason why it was done one way and not another. That is a legislative matter.

A constitutional issue is also raised. It is urged that the act under consideration offends against the 14th Amendment to the United States Constitution.

It is pointed out that this change in the method of measuring the annual license tax came after corporation had issued its mortgage bonds with maturities of more than four years, and this resulted in a trap for corporation because it cannot now change its capital setup. No authority is cited in support of this contention, and we take it to be an undisputed rule that no property owner or taxpayer has a vested interest in the scheme or method of taxation in effect at any given time. The power of Legislatures to change schemes and rates of taxation from time to time is undoubted. If this were not true, we would have as many different tax schemes and rates as property owners, and no uniformity or equality could

exist, or as an alternative the Legislatures would be without power to change.

Relying upon Sneed, Tr., v. Shaffer Oil & Refining Co., 35 Fed. 2d 21, corporation argues that discrimination results from the four-year test for the inclusion or exclusion of bonded debts. The case cited simply holds that it is discriminatory to levy one rate against domestic corporations and a higher rate against foreign corporations on no other basis than corporate situs. The so-called discrimination involved herein arises from the determination of our Legislature to treat the capital structure as the basis for measuring the annual license tax rather than the book value of the capital stock, of which no complaint is or can be made, and the inclusion in the capital structure of borrowed capital having a maturity beyond four years. None of the courts that have had occasion to pass upon this scheme has found it beyond the power of the Legislature, and no censure has been indulged based on the maturity allowed. See the annotation in 107 A. L. R. 1303. Legislatures must be allowed some latitude, and when our Legislature determines to treat bonded debts of more than four years maturity as a part of a corporation's capital structure, it must be because it considers that advantages arise from raising capital on a long time basis that do not or may not arise from a series of short term borrowings. We are unable to see any unreasonableness to this. We think what is said in Southern Realty Co. v. McCallum, 65 Fed. 2d 934, concerning a similar tax in Texas, and in State v. Banana Selling Co., 185 La. 688, 170 So. 30, applies here. In the latter case a Louisiana law, without specifically defining the term "borrowed capital," made "borrowed capital" a part of the capital structure in measuring the annual license tax, and it was held to include large habitual annual deficits. In so doing, the tax authorities found that a corporation with an authorized capital stock of $5,000 habitually owed sums in excess of $200,000, and paid annual dividends of many times its authorized capital stock, and from this concluded that the habitual

indebtedness constituted in fact "borrowed capital."

That law was upheld and it seems to us it allows for less uniformity than our act, for, whereas that law seems to permit capital structures to depend upon fact situations which may vary from year to year, our act defines the elements that enter into capital structures in Oklahoma. That different methods of doing business may result in different tax rates under the same scheme does not condemn the scheme. It is sufficient if the scheme is reasonable and not arbitrary, and is understandable, and applies alike to those who fall within its provisions.

The order appealed from is affirmed.

WELCH, C. J., and OSBORN, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, V. C. J., and RILEY, J., absent.