**OKLAHOMA TAX COMMISSION,**
Plaintiff in Error,

v.

**The LIBERTY NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, a national banking corporation,** Defendant in Error.

No. 36133.

Supreme Court of Oklahoma.

July 5, 1955.

Rehearing Denied Nov. 1, 1955.

R. F. Barry, W. F. Speakman and E. J. Armstrong, Oklahoma City, for plaintiff in error.

Embry, Crowe, Tolbert, Boxley & Johnson, V. P. Crowe, Wm. J. Holloway, Jr., Oklahoma City, for defendant in error.

WILLIAMS, Vice Chief Justice.

This action was instituted by The Liberty National Bank and Trust Company of Oklahoma City, hereinafter referred to as plaintiff, against the Oklahoma Tax Commission, hereinafter referred to as commission, to recover taxes paid by plaintiff under protest as a result of a deficiency assessment made by commission in connection with plaintiff's franchise tax for the years 1946, 1947 and 1948. The trial court rendered judgment for plaintiff for recovery of the taxes paid under protest for each of the three years involved, in the amounts of $5,431.94, $12,692.33 and

$17,354.54, respectively, and commission appeals.

The tax with which we are here concerned is the franchise tax levied on national banks in lieu of the regular income tax by virtue of 68 O.S.1951 § 887. Although it is a franchise tax, it is measured by a national bank's entire net income and is in practical effect an income tax. The particular controversy herein involves the right of the plaintiff bank to provide for a reserve fund against which bad debts can be charged and to deduct additions to such reserve fund from income in determining the net income subject to tax each year, rather than deducting actual bad debts from income in determining each year's net income. 68 O.S.1951 § 887, which levies the tax in question provides:

"(a) In lieu of the tax imposed by Section 876, every national banking association located or doing business within the limits of the State of Oklahoma, shall annually, pay to this State, a tax according to, or measured by, its net income, to be computed in the manner hereinafter provided, at the following rates upon the basis of its entire net income for the next preceding fiscal or calendar year:

"Four per centum (4%) of the amount of the net income as herein provided.

"(b) The State of Oklahoma is hereby adopting method numbered (4), authorized by Section 5219, U. S. Revised Statutes, as amended. The tax imposed by this Section shall be exclusive and in lieu of all taxes imposed by the State of Oklahoma, or any subdivision thereof, on the property of any association liable to tax hereunder; provided, that nothing in this Section shall be construed to exempt the real property of national banking associations from taxation to the same extent, according to its value, as other real property is taxed.

"(c) Any tax levied under this Section shall accrue on the first day after the close of the taxable year, as that term is defined in Section 874(h), and

the basis of the tax, according to, or measured by, the net income, shall include the entire net income from all sources to be determined by subtracting from the gross income as defined in Section 889, the deductions allowed in Section 880.

"Provided, however, that no deductions shall be allowed to any national bank or trust company for debts ascertained to be worthless and charged off within the taxable year; as defined by Section 880(f) hereof, unless said debts actually be charged off either under the order or direction, or with the approval of the examining officials having charge of the supervision or examination of said bank or trust company. Laws 1935, p. 297, § 16; Laws 1947, p. 451, § 8."

The section 880 referred to in the above quoted statute is 68 O.S.1951 § 880, which is the section of the income tax act dealing with deductions from gross income allowed in computing net income. Thus it appears that the same law with reference to allowable deductions in computing net income is applicable to both the income tax and the franchise tax here in question, with one minor exception which will be hereinafter referred to. The only portion of the statute which refers to deductions for bad debts is 68 O.S.1951 § 880(f), which reads as follows:

"(f) Debts ascertained to be worthless and charged off within the taxable year. In the case of a debt existing on January 1, 1931, no more than its fair market value on that date shall be deducted. A worthless debt arising since January 1, 1931, from unpaid wages, salary, rent, sales or any similar item of taxable income, is not an allowable deduction, unless the income which such item represents has been included as income by the taxpayer in a return rendered under this Act, or under prior income tax laws".

By virtue of its statutory authority to prescribe and promulgate such rules and regulations as may be necessary to ascertain and compute the tax payable by any

taxpayer, commission has at all times since 1931, by regulation, provided that bad debts may be treated in either of two ways:

1. By deduction from income, in respect of debts ascertained to be worthless; or

2. By a deduction from income of an addition to a reserve for bad debts.

On November 30, 1943, plaintiff in writing requested commission's permission to go on a reserve for bad debts basis of accounting for tax purposes. On December 2, 1943, commission in writing acknowledged receipt of such request and requested plaintiff to advise if the Commissioner of Internal Revenue had consented to plaintiff's going on a reserve for bad debts basis of accounting for Federal tax purposes. On December 31, 1943, plaintiff in writing advised commission that the Commissioner of Internal Revenue had consented to plaintiff's going on a reserve for bad debts basis of accounting. Commission thereafter failed to advise plaintiff that such request was either granted or denied.

In 1943 plaintiff set up on its records a reserve for bad debts in the amount of $125,454.45. Actual bad debts accruing in 1943 aggregated $454.45 which amount was charged to the reserve for bad debts, leaving a balance therein as of the close of 1943, of $125,000. In its 1943 tax return to commission, plaintiff showed on the first page thereof under item 18, entitled "bad debts", the sum of $125,454.45, and on a schedule entitled "balance sheet", attached to such return, plaintiff showed the item "Reserves", $125,457.18.

In 1944 plaintiff added $100,000 to the reserve and charged to the reserve as bad debts accruing in 1944 the sum of $125,-251.22, leaving a balance in the reserve at the close of 1944 of $99,948.89. Plaintiff's 1944 tax return to commission disclosed such procedure by an entry under item 18 thereof as follows:

"Bad debts—addition to reserve—$100,-000.00."

In 1945 plaintiff added $63,224.83 to its reserve for bad debts and charged to the reserve as bad debts accruing in 1945 the sum of $13,173.72, leaving a balance in the reserve at the close of 1945 of $150,000. The addition to the reserve made in 1945 was shown as such on the 1945 tax return filed with commission and claimed as a deduction.

The tax returns filed by plaintiff for the years 1943, 1944 and 1945 were received and accepted by commission without complaint or protest. In 1947 commission made a field audit of plaintiff's 1944 tax return and made a small additional assessment of tax against plaintiff as a result of certain minor adjustments in the return, which assessment was paid by plaintiff without protest. At the time of the field audit in 1947, commission's auditor noted that plaintiff was using the reserve for bad debts method and expressed an opinion to plaintiff's agents that such was not a proper method for a bank. No correction of the return in this regard was made by the auditor or commission however. In this regard it should probably be noted that deduction claimed by plaintiff for addition to reserve on the 1944 return, which was the subject of the audit, was $25,251.22 less than the actual bad debts accruing during the year and for which plaintiff would have been entitled to a deduction had it not been using the reserve for bad debts method.

In 1946 plaintiff added $75,771 to its reserve for bad debts, which was shown on the tax return filed with commission and experienced actual bad debts in the amount of $30,242.45, which were charged against the reserve.

In 1947 plaintiff added $339,189.39 to its reserve for bad debts, as shown by its tax return filed with commission, and experienced actual bad debts in the amount of $188,242.22, which was charged against the reserve.

In 1948 plaintiff added $280,000 to its reserve for bad debts, and in addition credited such reserve with the sum of $146,440.27, which represents recoveries in that year of bad debts previously charged off, all of which was shown on the tax return filed with commission, and experi-

enced actual bad debts in the amount of $41,848.32, which were charged against the reserve.

In December of 1950, commission made a field audit of plaintiff's 1946, 1947 and 1948 tax returns resulting in the deficiency assessments for those three years which are the subject of this controversy. This deficiency assessment arose by virtue of commission's refusal to permit plaintiff to use a reserve method for bad debts for the 3 years in question and commission's determination to require that bad debts experienced by plaintiff in said years be charged against reserves for bad debts set up by plaintiff in previous years and from commission's disallowance of an addition to the reserve for bad debts in the year 1948 in the amount of $146,440.20 recovered on bad debts charged off in prior years. More specifically, for the year 1946 commission disallowed the addition to reserve for that year of $75,551.00, and refused to allow the bad debts actually charged off in the amount of $30,242.45 as a deduction against income, but instead charged the actual bad debts against the reserve for bad debts previously set up by plaintiff. For the year 1947 commission disallowed the addition to reserve for the year of $339,189.39, and disallowed as a deduction against income plaintiff's actual bad debts in the amount of $188,242.22, but allowed $68,383.67 of the actual bad debts as a deduction against income and charged the balance of the actual bad debts against the reserve for bad debts previously set up by plaintiff. Incidentally the balance of actual bad debts charged against the reserve was sufficient to completely wipe out such reserve. For the year 1948, commission disallowed the $280,000 addition to the reserve for bad debts and also the $146,440.27 credited to such reserve representing recoveries in that year of bad debts previously charged off, but did allow as a deduction from income plaintiff's actual bad debts for the year in the amount of $41,848.32, thereby increasing plaintiff's net taxable income for the year 1948 by the sum of $384,691.95.

Plaintiff paid the additional tax resulting from the foregoing actions of com-

mission under protest and then filed this action to recover the same in accordance with the appropriate statutes relating thereto. Trial was had to the court, and the court found that plaintiff was entitled during the years 1946, 1947 and 1948 to treat bad debts in its tax returns to commission by a deduction from income of an addition to a reserve for bad debts and therefore rendered judgment for plaintiff for recovery of the tax paid under protest.

The only question presented by this appeal is whether plaintiff, as a national bank, was entitled to treat bad debts in its tax returns for the years in question by a deduction from income of an addition to a reserve for bad debts. There is no question as to the reasonableness of the amount of the additions made or claimed by plaintiff, it being stipulated that such amounts were at all times reasonable and proper if plaintiff was entitled to use such method of accounting for bad debts.

■ Commission contends that for tax purposes a taxpayer cannot compute his income and the tax thereon on a reserve for bad debts basis in the absence of statutory authorization therefor, and that Oklahoma has no statute granting such authority. In support of such contention it points out that for federal tax purposes the applicable statute, 26 U.S.C.A. § 23(k)(1) provides for a deduction in computing net income of debts which became worthless within the taxable year or a reasonable addition to a reserve for bad debts, whereas for Oklahoma tax purposes the applicable statute, 68 O.S.1951 § 880(f) above quoted, only provides for deductions of debts ascertained to be worthless and charged off within the taxable year, and makes no mention of a reserve for bad debts. Commission's contention might have merit had it ever taken such a position prior to this time. The Oklahoma statute in question has been substantially the same since 1931. Commission has consistently since 1931 interpreted such statute as authorizing a reserve for bad debts method of writing off bad debts. Not only

did the regulations issued by commission in effect during the tax years in question here provide for the reserve for bad debts method, but the commission's present regulations, currently in effect, still so provide. We are of the opinion that commission's own consistent administrative interpretation of the tax statute for a period of over 20 years must prevail over a contrary interpretation now suggested by it for the first time. Williams v. Continental Construction Corp., 168 Okl. 510, 34 P.2d 254.

■ Commission concedes that its interpretation of the statute has probably established the propriety of the reserve for bad debts method for taxpayers generally, but insists that plaintiff is nevertheless not entitled to use such method because it is a national bank and the tax on such bank is levied by 68 O.S.1951 § 887, and the last paragraph of such section, which is quoted above, in effect prohibits national banks from using such reserve for bad debts method of accounting. We do not so interpret such statute, however. The cited paragraph limits deductions for bad debts ascertained to be worthless and charged off within the taxable year to such debts as are charged off at the direction of or with the approval of the bank examiner. It is aimed at the problem of proof on the question of worthlessness of particular debts and sets a minimum requirement of proof of such worthlessness in the case of national banks. A similar standard is set for other taxpayers subject to governmental examination, such as state banks, trust companies and credit unions, by 68 O.S.1951 § 888. The statute in question has nothing to do with either allowing or prohibiting the use of the reserve for bad debts method of accounting by banks. Commission contends that it has consistently construed such statute as denying the use of the reserve for bad debts system of accounting to national banks since 1935, and that such construction is entitled to great weight. The record does not sustain such contention, however. In the only other case to come before this court involving a national bank and the same tax as here involved, which was National Bank of Tulsa v. Oklahoma Tax Commission, 193 Okl. 529, 145 P.2d 768, decided in 1944, commission suggested no such construction of the statute. In that case the national bank involved was using the reserve for bad debts method of accounting on its tax returns to commission. Commission made an additional assessment for the years 1937 and 1938 against the taxpayer in that case on the theory that its reserve for bad debts was too large and that it had not properly accounted for its recovery of debts previously written off as worthless. In the opinion in that case we said:

"The controversy involves the question of the proper treatment of bad debts owing to the taxpayer with reference to their deduction from gross income and their inclusion therein when subsequently collected, 68 O.S. 1941 § 880(f).

"The commission, acting pursuant to authority said to have been delegated to it by 68 O.S.1941 § 905, promulgated certain rules and regulations for handling bad debts in the process of determining taxable income. According to those rules, the taxpayer is authorized to adopt either of two methods to that end. He may employ the so-called direct method of deduction of such debts when they are ascertained to be worthless, or he may adopt what might be termed the indirect method of deduction through the medium of a reserve account maintained for the purpose of absorbing all losses resulting from the charge-off of worthless debts. This reserve account is to be maintained at a level consistent with anticipated losses as estimated with due regard to the character of the taxpayer's business, the trend of the times, and the average losses theretofore sustained as a result of bad debts. When debts ascertained to be worthless are charged off, the reserve account suffers to that extent, and additions thereto may be made in each tax year in order to maintain it at the proper level as aforesaid. The amounts so charged off do not necessarily control the amount of addi-

tions that must be made to the reserve account. The amount of the additions to be allowed depends on the anticipated charge-offs estimated in the manner stated above. These necessary additions constitute the deductions to be allowed the taxpayer in lieu of direct deductions for each charge-off.

"The taxpayer in this case adopted the reserve account, or indirect, method of claiming deductions for bad debts from its gross income." We then held the amount of the reserve created by the taxpayer to be reasonable and its handling of recovery of debts previously written off as worthless to be proper. Commission did not even suggest in that case that the reserve for bad debts method of accounting was not available to national banks. Furthermore, commission's regulations throughout the period of 1935 to 1949 contained nothing to indicate that the reserve for bad debts system therein provided for was not available to banks. It is true that in 1949, after this controversy had arisen, commission amended its regulations so as to make them read as follows:

"Art. 800(f)-1—Deductions from Gross Income—Bad Debts.—(d). Bad debts may be treated in either of two ways—

"(1) By a deduction from income in respect of debts ascertained to be worthless, or

"(2) By a deduction from income of an addition to a reserve for bad debts; however, this mode of treatment is not available to taxpayers as referred to in Sections 887 and 888. (Banks)"

However, such an interpretation promulgated for the first time after the controversy in question arose, carries no presumption of correctness and is entitled to no weight whatsoever so far as this case is concerned. We also note that when plaintiff in 1943 requested permission to adopt the reserve for bad debts method, commission did not advise plaintiff that such method was not available to a bank but merely inquired as to whether plaintiff had received such permission from the federal authorities in connection with its federal tax returns.

We therefore conclude that there has been no such consistent administrative construction of the statute in question by commission as would add any weight to the erroneous construction of such statute now advanced by it.

We find no error in the judgment of the trial court and it is therefore affirmed.

JOHNSON, C. J., and WELCH, CORN and JACKSON, JJ., concur.

BLACKBIRD, J., dissents.