**ORAL ROBERTS UNIVERSITY, Appellant,**

v.

**OKLAHOMA TAX COMMISSION, Appellee.**

No. 62458.

Supreme Court of Oklahoma.

Nov. 25, 1985.

Rehearing Denied March 12, 1986.

Jack H. Santee, Jeffrey D. Stoermer, Tulsa, for appellant.

J. Lawrence Blankenship, Donna E. Cox, Oklahoma City, for appellee.

George Miller, Charles L. Dollarhide, II, Andrew E. Thurman, Oklahoma City, for amicus curiae Baptist General Convention of the State of Oklahoma.

SUMMERS, Justice.

At issue is whether the Oklahoma Tax Commission may by its own order modify its former long standing interpretation of a statute relating to the state sales tax. We hold that under the facts of this case (which are uncontroverted) it may not. A

chronological statement of the record is in order.

In 1935 the legislature enacted a sales tax law which exempted sales to charitable organizations and to religious organizations in one section. At page 310, O.S.L. 1935 the law read:

"There are hereby specifically exempted from the tax levied by this article:

(h) The gross proceeds derived from the sale of tangible personal property or for services to or by charitable or religious organizations to the extent that the income is used for philanthropic purposes."

In 1937 the legislature split the exemption into two separate subsections.

"(h) The gross receipts or gross proceeds derived from the sale of tangible personal property or services to or by churches, except where such organizations may be in business for profit or savings, competing with other persons engaged in the same or similar business.

(i) The gross receipts or gross proceeds derived from the sale of tangible personal property, or services to charitable organizations except where such organizations...." (continues same as above)

In 1941 the legislature abolished the (i) exemption for charitable organizations leaving only the "churches" exemption. The exemption for churches remains to this date in 68 O.S. 1981 § 1356(E) with only slight changes from the language used in the 1937 amendment.

As early as 1948 the Oklahoma Tax Commission advised Oklahoma City University that it was the opinion of the Sales Tax Division that since O.C.U. was a "nonprofit educational institution and connected with and chiefly supported by a church, the same [was] exempt from the payment of Oklahoma sales and use tax".[1]

In 1964 appellant Oral Roberts University requested an opinion from the Tax Commission as to whether such an exemption would be granted to it in the same manner as had been previously granted to Tulsa University, Phillips University and other schools under the sponsorship of church organizations. By letter of May 8, 1964 the Director of the Sales Tax Division, Oklahoma Tax Commission, advised the appellant that it would be granted similar exemptions that had been granted to other universities which were under the domination and sponsorship of various church organizations.[2]

As recently as 1975 the Director of the Sales and Use Tax Division for the Oklahoma Tax Commission advised the controller of Oklahoma City University that inasmuch as it was a nonprofit educational institution connected with and chiefly supported by a church it remained exempt under the sections previously referred to.[3] At no time until the order now before the Court did the Tax Commission attempt to make the sales tax applicable to a church supported university.

The litigation before us was spawned by an order from the Oklahoma Tax Commission No. 84–04–16–11 dated April 16, 1984 whereby it determined its previous construction of Section 1356(E) to have been in error, and thereby directed denominational and sectarian educational institutions, such as appellant herein, to collect, report, and remit sales tax contrary to its previous practice. Pursuant to 68 O.S. 1981 § 225 ORU timely invoked the appellate jurisdiction of this court. Baptist General Convention of the State of Oklahoma has been permitted to file its brief as Amicus Curiae.

 Query: Under what circumstances may an administrative body unilaterally reverse its interpretation of a statute? Generally speaking, an administrative agency has the flexibility to correct its own erroneous interpretation of the law.[4] However, there is a long line of cases holding that the interpretation or construction of

---

1. Record of Proceedings before Oklahoma Tax Commission, April 16, 1984, at P. 10.

2. Id at p. 9.

3. Id at p. 11.

4. *Helvering v. Wilshire Oil Co.,* 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101 (1939).

an ambiguous or uncertain statute by the agency charged with its administration is entitled to the highest respect from the courts, specially when the administrative construction is definitely settled and uniformly applied for a number of years.[5] In such cases the administrative construction will not be disturbed except for very cogent reasons,[6] provided that the construction so given was reasonable.[7]

In *McCain v. State Election Board*,[8] we stated the applicable rule:

> "It is a well settled rule that the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, while not controlling, is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. The courts are especially reluctant to overturn a long standing executive or departmental construction where great interests have grown up under it and will be disturbed or destroyed by the announcement of a new rule, or where parties who have contracted with the government upon the faith of such construction will be prejudiced." [9]

This rule was applied in *Okla. Tax Comm. v. Liberty Nat'l. Bank and Trust Co.*[10] The issue was whether Liberty could use a "reserve for bad debts" method of writing off bad debts, given a statute that allowed bad debts to be "charged off." In 1943, Liberty asked the Commission, in writing, if using this method would be proper. The Commission asked Liberty if it had been cleared to do so by the Internal Revenue Service. Liberty replied, "Yes", the Commission did not reply, and Liberty

went ahead and started such a system. Four years later, a Commission field auditor, in reviewing Liberty's 1944 return, commented verbally that he thought Liberty was using "an improper method", but did not correct the tax return in question. Not until three years later did the Commission formally question the method used, assessing back taxes against Liberty. This Court held in favor of Liberty, saying:

> "We are of the opinion that Commission's own consistent administrative interpretation of the tax statute for a period of over 20 years must prevail over a contrary interpretation now suggested by it for the first time." [11]

In *Peterson v. Okla. Tax Comm.*,[12] this Court held that a statutory provision defining the word "sale" required the taxpayer to pay a sales tax, in addition to an excise tax, on a lease of some cars to another party.

> "We can only conclude that we should not overturn the Commission's long continued construction of the tax acts under consideration.... This construction is substantiated by the legislative acquiescence in the Commission's construction and also an amendment to (the section), which was enacted by the Legislature." [13]

In order to determine whether the Tax Commission's reversal of its long standing interpretation of § 1356(E) falls into this category two questions must be addressed:

(1) Is the exemption for "churches" subject to more than one interpretation?

(2) Did the Tax Commission reverse its previous interpretation for "cogent" reasons?

5. *Logan v. Davis,* 233 U.S. 613, 34 S.Ct. 685, 58 L.Ed. 1121 (1914).

6. *Federal Trade Com. v. Henry Broch & Co.,* 363 U.S. 166, 80 S.Ct. 1158, 4 L.Ed.2d 1124 (1960); *United States v. Leslie Salt Co.,* 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956).

7. *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944)

8. 144 Okl. 85, 289 P. 759 (1930).

9. Id. at 762–763.

10. 289 P.2d 388 (Okl.1955).

11. Id at 392.

12. 395 P.2d 388 (Okl.1964).

13. Id at 392.

The word "church" is not defined in the Oklahoma Statutes, nor has it been defined by Congress.[14] By the Courts it has been narrowly defined as a physical place where persons regularly assemble for worship,[15] and broadly defined as an organization or society for religious purposes, for the public worship of God.[16] In *Swart v. So. Burlington Town School District*,[17] a parochial school was held to be an "integral part" of the Roman Catholic Church. In *De La Salle Institute v. U.S.A.*[18] the Court, citing but disagreeing with *Swart*, supra, held that a university was not a "church" even though it had a chapel and a required religion course. In *Maumee Valley Broadcasting Assn. v. Porterfield*[19] it was held that a non-profit religious radio station was a "church" rather then a "radio station" and thus not subject to the state sales tax.

It is quite evident that the word "churches" is subject to more than one interpretation in its context of § 1356(E), and therefore the longstanding construction given it by the Commission must be given great weight.

Has the Commission furnished us with "cogent" reasons for its turnaround? "Cogent" according to Webster means "compelling ... appealing forcibly or conclusively to the mind or reason; convincing...."[20] For the Commission's reasoning we look to paragraph 7 of the Order:

"7. The application of § 1305 subsection (e) presently codified as § 1356(E) by a previous Director of the Sales and Use Tax Division appears to be erroneous and should be corrected to conform to the strict exemption of sales to or by a church *specified* by the Oklahoma Legislature." (emphasis added)

The problem is that the legislature has *not* yet specified what it meant by "churches". Mr. Crump, Director of Sales Tax Division in 1948 specified what the Commission thought the legislature meant to say in the 1948 letter to Oklahoma City University. Mr. Hampton, a later Director of the Sales Tax Division, undertook to tell O.R.U. in 1964 and O.C.U. again in 1975 what the legislature had meant by "churches". But as of the 1984 order the legislature still had not specified what had been meant by the exemption.

■ During all this time the legislature had not only retained the essence of the exemption for "churches", it had amended the statute slightly, and re-enacted it under a new section number. It has been held that the legislature *adopts* an administrative construction of a statute when, subsequent to such construction, it amends the statute or re-enacts it without overriding such construction.[21] In *Peterson*, supra, we said:

"... where the legislature convened many times during this period of administrative construction without expressing its disapproval, such silence may be regarded as acquiescence in or approval of the administrative construction."[22]

■ So not only is there an absence of specificity on the legislature's part as to the intended meaning of "churches," the legislature by its re-enactment without disapproval has as a matter of law adopted the construction originally given by the Commission.

---

14. *The Church of the Visible Intelligence That Governs the Universe v. U.S.*, 4 Cl.Ct. 55, 64 (1983).

15. *Foster v. Harding*, 426 P.2d 355 (Okl.1967), a zoning case.

16. *Bennett v. City of La Grange*, 153 Ga. 428, 112 S.E. 482 (1922), a Salvation Army case. See also *First Independent Missionary Baptist Church of Chosen v. McMillan*, 153 So.2d 337 (Fla.App. 1963).

17. 122 Vt. 177, 167 A.2d 514 (1961).

18. 195 F.Supp. 891 (D.C.Cal.1961).

19. 29 Ohio St.2d 95, 279 N.E.2d 863 (1972).

20. Webster's New Int'l. Dictionary, 2nd ed., 1961.

21. *Federal Housing Administration v. Darlington, Inc.*, 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958); *Cammarano v. United States*, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959).

22. Supra note 7 at 391.

It is universally understood that churches exist for purposes other than providing a place to worship; one of the more common is to provide facilities for an institution of learning. The legislature may or may not have intended such church supported educational institutions to be exempt from sales tax when the statute of 1937 became law. But the issue of whether this institution of higher learning is a "church" under 68 O.S.1981 § 1356(E) is not before us. Arguments can be made either way. We as a Court are not required to perceive at this late date the intent of that legislature. The Tax Commission's own undeviating position for at least 37 years plus the legislature's disinclination to modify the substance of the statute during that period has now caused the original construction to be so firmly entrenched that the Commission may not with the stroke of a pen undo it. That would be a power reserved only to the legislature.

We find no cogent reason expressed or implied for the attempted change of construction, and we find the exemption for "churches" to be sufficiently ambiguous to permit of the construction originally given. Order No. 84–04–16–11 of the Oklahoma Tax Commission is therefore held invalid, vacated and set aside insofar as it purports to subject denominational or sectarian educational institutions to the sales or use tax of Oklahoma.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER and KAUGER, JJ., concur.

HODGES, HARGRAVE and WILSON, JJ., dissent.

OPALA, J., concurs in judgment.