TULSA TRIBUNE COMPANY, an
Oklahoma corporation, Appellant,

v.

STATE of Oklahoma, ex rel, OKLA-
HOMA TAX COMMISSION,
Appellees.

No. 66394.

Supreme Court of Oklahoma.

Jan. 31, 1989.

As Corrected Feb. 28, 1989.

Mark H. Allen, James F. Adams, Ken-
neth E. Dornblaser, Randy R. Shorb, Gable
& Gottwals, Inc., Tulsa, for appellant Tulsa
Tribune Co.

J. Lawrence Blankenship, General Coun-
sel, Robert B. Struble, Marjorie Welch,
Oklahoma City, for appellees Oklahoma
Tax Com'n.

SUMMERS, Justice.

Tulsa Tribune Company (taxpayer), an
Oklahoma corporation, appeals an assess-
ment for additional franchise taxes for the
year July 1, 1982 through June 30, 1983.[1]
The Oklahoma Tax Commission (Commis-
sion) assessed additional franchise taxes
after requiring appellant to report as capi-
tal used, employed or invested in Oklahoma
certain undistributed income attributable to
business activities of appellant's wholly
owned subsidiary, Harvard Inn, Inc. (sub-
sidiary), and affiliate corporations, Newspa-

---

1. In 1986 the Tax Commission withdrew its as-
sessment and filed a Motion to Dismiss the
appeal. The taxpayer objected to dismissal, urg-
ing from us an opinion to settle an issue of
"great and far reaching importance to domestic
and foreign corporations in Oklahoma." It also
objected to what it viewed as an attempt "to
avoid judicial review" by simply "withdrawing
the challenged rule." By Order dated Novem-
ber 10, 1986 we denied the Motion, citing *Payne*

*v. Jones,* 193 Okl. 609, 146 P.2d 113 (1944),
which held that questions involving tax matters
may be of such public importance that the court
need not withhold determination merely be-
cause the issues between the parties have be-
come moot. Our vote on the November 10,
1986 Order was: Simms, C.J., Doolin, V.C.J.,
Hodges, Hargrave and Wilson, JJ., concur.
Opala, J., Dissent: "I would dismiss and give a
counsel-fee award."

per Printing Corporation, Magic Empire Express, Tulsalite, Inc. and Green Country Distributors, Inc. (affiliates).

The Commission supports its assessment based upon its opinion that the terms of 68 O.S.1981 §§ 1201, 1203 and 1209 require corporate taxpayers to include undistributed income of subsidiaries and affiliates for purposes of annual franchise tax assessment. We disagree. The Commission's position constitutes a reversal of a long standing construction of ambiguous statutes without cogent reason and in contravention of this court's ruling in *Oral Roberts University v. Oklahoma Tax Commission,* 714 P.2d 1013 (Okla.1985).

We recognize, however that the Commission might appropriately assess franchise tax against a parent company based in part upon undistributed income of the parent's subsidiary if the subsidiary were merely an adjunct of the parent. We therefore hold that absent specific legislation, assessment of Oklahoma franchise tax upon capital used, invested or employed in Oklahoma shall not include undistributed income of the tax paying company's subsidiary or affiliate companies unless the Oklahoma Tax Commission finds that the subsidiary or affiliate companies function entirely as instrumentalities or adjuncts of the parent, and that circumstances require disregard of separate corporate entities to avoid fraud or injustice.

Title 68 of the Oklahoma Statutes requires an annual franchise tax assessment "upon every corporation ... organized under the laws of this State." 68 O.S.1981 § 1203. Oklahoma franchise taxes "become due and payable on the 1st day of each year ..." 68 O.S.1981 § 1208(c). This annual assessment is a privilege tax, its purpose being "to require the payment to the State of Oklahoma this tax for the right granted by the laws of this State to exist as such organization and enjoy, under the protection of the laws of this State, the powers, rights, privileges and immunities derived from the State by reason of the

form of such existence." 68 O.S.1981 § 1203.

No suggestion appears in the record that either Tulsa Tribune or its subsidiary or affiliates failed to pay franchise tax. The only dispute focuses upon which entity's return should report as capital the undistributed income of the subsidiary and affiliates. The record reflects that appellant intended to report as it had always done, the cost of acquiring its interest in its subsidiary and affiliates, and that the subsidiary's and affiliates' undistributed profits would be reported and taxed as capital in the various companies' annual franchise tax returns.

Since taxation remains a statutory creature, the initial question presented asks whether applicable Oklahoma franchise tax statutes require a parent company to report undistributed income of wholly owned subsidiary and/or affiliate companies as capital used, invested or employed in corporate activities in the state. We find no such statutory requirement.

Oklahoma assesses franchise tax upon business organizations based upon "capital used, invested or employed in the exercise of any power, privilege or right inuring to such organization within this State." 68 O.S.1981 § 1203. The parties dispute the construction of 68 O.S.1981 § 1209, which statute provides in relevant part that

" '[C]apital' shall be construed to include the following:

(1) Outstanding capital stock, surplus and undivided profits, which shall include any amounts designated for the payment of dividends until such amounts are definitely and irrevocably placed to the credit of stockholders subject to withdrawal on demand, plus the amount of bonds, notes, debentures or other evidences of indebtedness maturing and payable more than three (3) years after issuance. The term 'capital stock' where herein used shall include all written evidence of interest or ownership in the control or management of a corporation or other organization." 68 O.S.1981 § 1209.[2]

---

2. This 1963 form of the statute was effective for the 1982 assessment here at issue. The legisla-

ture amended § 1209 in 1985 but those changes do not apply to the facts at issue. We note

The legislature may measure franchise tax based upon capital used, invested or employed, and indeed may define the term "capital" provided the definition is neither arbitrary nor unreasonable. *Thompson Building Co. v. Oklahoma Tax Commission,* 192 Okl. 1, 132 P.2d 962 (1942). We must determine not the validity but the proper construction of the applicable statute.

Tulsa Tribune complains that the Commission's action forces it to adhere to an accounting practice chosen by the Commission.[3] We considered and rejected the argument that tax statutes silent as to accounting practices could be construed to prohibit a particular accounting method. *Oklahoma Tax Commission v. Liberty National Bank and Trust Co. of Oklahoma City,* 289 P.2d 388 (Okla.1955).

In *Liberty Bank,* we affirmed the trial court's order allowing the bank a refund of taxes paid under protest where no statute required taxpayers to use a particular accounting method, and the Commission refused to permit the bank to employ the "reserve for bad debt" method in determining worthlessness of bad debts. We ruled that the applicable statute[4] was "aimed at problems of proof on the question of worthlessness of particular debts ... [and that] the statute in question has nothing to do with either allowing or prohibiting the use of the reserve for bad debts method of accounting by banks." *Liberty Bank,* supra at 392.

As in *Liberty Bank,* the statutes before us contain no specific accounting requirements and therefore create no obligations for taxpayers to choose one acceptable method over another. Consequently, our inquiry must focus upon the existing language applicable to franchise tax computation, previous application and construction of applicable statutes, and the effect of such previous applications and construc-

tions on the taxpayer before us, Tulsa Tribune.

This dispute turns upon that portion of the statute which defines "capital stock" as "all written evidence of interest or ownership in the control or management of a corporation or other organization." 68 O.S. 1981 § 1209. This provision has been effective since 1963, and remains effective as amended in 1985.

The Oklahoma Tax Commission has applied this statute consistently to franchise tax returns since its enactment. The record reflects that until this 1982 assessment, the Commission never required a corporation to include undistributed income of subsidiary or affiliate companies as part of its tax base for purposes of franchise tax assessment.

Long standing precedents entitle an administrative agency to correct an erroneous interpretation of the law. *Helvering v. Wilshire,* 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101 (1939); *Oral Roberts University v. Oklahoma Tax Commission,* 714 P.2d 1013, 1014 (Okla.1986). Ordinarily however,

> "the interpretation or construction of an ambiguous or uncertain statute by the agency charged with its administration is entitled to the highest respect from the courts, especially when the administrative construction is definitely settled and uniformly applied for a number of years. In such cases the administrative construction will not be disturbed except for very cogent reasons, provided that the construction so given was reasonable. *Oral Roberts University* at 1014–15."

The record reflects that the Commission, in its ruling against Tulsa Tribune reversed its long standing application of the franchise tax statutes. Consequently, we inquire whether the statutory language at issue is subject to more than one interpretation, and if so, whether the Commission

however, that the substance of the amendment does not alter the method of assessment.

**3.** Appellant contends here as it did below that the Commission's assessment requires it to use the "equity" rather than the "cost" method of accounting. The "cost" method uses company's

cost of acquiring interest or ownership in another entity in tax reporting. The "equity" method differs in that increase in value of the original investment applies in forming the tax base.

**4.** 68 O.S.1951 § 887.

reversed its previous stance for cogent reasons.

We find that the parties interpret the statutory phrase "interest or ownership in the control or management of a corporation" very differently. 68 O.S.1981 § 1209. The Commission suggests that the language "written evidence of ... control or management" exists separate from and equal to the phrase "written evidence of interest or ownership in". The sentence however contains no punctuation indicating that the two clauses are equal elements in a series. Rather, the sentence employs a string of prepositional phrases each subordinate to the one preceding it. Thus, grammatical imprecision renders the statute susceptible of varying interpretations which require clarification and correction.

Simply stated, capital stock includes all written evidence of interest or ownership. Once a company reports its holdings in other businesses, the degree of the parent company's control or management of those other businesses becomes important in determining which entity, as between parent and subsidiary or affiliate pays franchise tax upon the subsidiary's or affiliate's undistributed income.

We make this determination by examining the cases, which define the method for computing the value of a corporation's capital stock. In so doing, we find no cogent reason for the Commission's reversal of its previous consistent application of the franchise tax statutes. The Commission urges that its interpretation of the statutes changed because of its erroneous application of the cases construing the predecessor licensing statutes which hold that capital stock shall be measured by its book value. *Southwestern Light and Power Co. v. Oklahoma Tax Commission*, 178 Okl. 277, 62 P.2d 637 (1936); *Thompson Building Co. v. Oklahoma Tax Com-*

*mission*, 192 Okl. 1, 132 P.2d 962 (1942). We disagree.

In *Southwestern Light and Power*, we defined the value of a corporation's capital stock for purposes of annual corporate licensing fee as book value, or the market value of the corporation's assets minus its liabilities. *Southwestern Light and Power* 62 P.2d at 640.[5] The Commission erroneously assumes that undistributed income of a subsidiary automatically qualifies as an asset of the parent. This assumption strains the holding in *Southwestern Light and Power* beyond its simple requirement that the Commission determine "book value" for franchise tax purposes by subtracting the taxpayer's liabilities from its assets. *Southwestern* 62 P.2d at 639.

We determine which company uses, invests or employs the asset here at issue, namely undistributed income of the subsidiary and affiliates, by turning to the rules governing corporate entities. The general rule states that a corporation is a

"distinct legal entity, separate and apart from other legal entities, but this rule has its limitations. The distinct legal entity may be avoided if it appears from the examination of the entire facts either that (1) the separate corporate existence is a design or scheme to perpetrate fraud, or (2) that one corporation is so organized and controlled, and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. In other words, it must appear that one corporation is a dummy or a sham." *Gulf Oil Corp. v. State*, 360 P.2d 933, 936 (Okla.1961).[6]

Further, the Tenth Circuit applied this general rule in affirming an order from the Western District of Oklahoma in an appeal to recover federal excise taxes paid under protest. *Continental Oil Co. v. Jones*, 113

**5.** While *Southwestern Light and Power* imprecisely uses the phrase "market value" in defining book value, we recognize that standard accounting principles define book value as the *cost* of assets minus liabilities. E. Kohler, *A Dictionary for Accountants* (4th ed. 1970).

**6.** In this appeal from an order of the Oklahoma Corporation Commission, we ruled that the par-

ent company was neither a common carrier nor a purchaser because its wholly owned subsidiary owned and operated the pipeline, the corporations had different directors, and subsidiary was not merely an instrument or adjunct of the parent. *Gulf Oil Corp. v. State*, 360 P.2d 933 (Okla.1961).

F.2d 557 (10th Cir.1940); cert. den. 311 U.S. 687, 61 S.Ct. 64, 85 L.Ed. 443. The court found that the separate companies had been created in large part to evade taxes which justified disregard of separate corporate entities, and reasoned that

> "the mere fact that a parent corporation owns all of the stock in a subsidiary, standing alone and without more, is not enough to warrant the disregard of their separate juridical entities. It usually is where such ownership of stock is used and employed not for the purpose of participating in the affairs of the subsidiary in the usual and normal manner but for the purpose of dominating and controlling it in such manner and to such extent that it becomes the mere agency or instrumentality of the parent (*United States v. Lehigh Valley R.R. Co.*, 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; *United States v. Delaware, Lackawanna & Western R.R. Co.*, 238 U.S. 516, 35 S.Ct. 873, 59 L.Ed. 1438; *Chicago, M. & St. Paul Ry. Co. v. Minneapolis Civic Association*, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; *United States v. Reading Co.*, 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760), or where to maintain separate corporate entity would work fraud or injustice (*Taylor v. Standard Gas Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669) that they are treated as merged."

*Continental Oil Co. v. Jones,* supra at 562.

By stipulation and agreement of the parties, the Commission in its findings of fact states that, "for the period in question, Protestant [taxpayer], through a wholly owned subsidiary ... also conducted certain real estate activities. In addition, Protestant conducts activities related to its newspaper publishing business through affiliates in which it owns less than one hundred percent (100%) of the stock interests ..." Absent from the record however, is any evidence which would enable us to determine whether Tulsa Tribune's "ownership of stock is for the purpose of participating in the affairs of the subsidiary in the normal manner", or "for the purpose of dominating and controlling it in such a manner and to such an extent that it becomes the mere agency or instrumentality

of the parent." *Continental Oil,* supra at 562.

The Commission bases this reversal of its long standing statutory application solely upon its claim that it has consistently misapplied this court's ruling in *Southwestern Light and Power Co. v. Oklahoma Tax Commission,* supra. However, the Commission's error occurred not with its application of the rule that "book value" applies to these determinations, but in its finding without proper evidence that the undistributed income attributable to Tulsa Tribune's subsidiary and affiliate companies constitutes an asset controlled by Tulsa Tribune. Further, we do not agree that the earlier interpretation of *Southwestern Light and Power Co. v. Oklahoma Tax Commission* was incorrect. The Commission's present erroneous application of existing law to the facts before it presents no cogent reason upon which the Commission may properly reverse its prior application of the franchise tax statutes.

Absent specific legislation, assessment of Oklahoma franchise tax on capital used, invested or employed in Oklahoma does not include undistributed income of the taxpayer company's subsidiary or affiliate companies unless the Commission finds that the subsidiary or affiliate companies function entirely as instrumentalities or adjuncts of the parent, and that circumstances require disregard of separate corporate entities to avoid fraud or injustice. We therefore reverse the order of the Oklahoma Tax Commission and remand this matter for further proceedings consistent with this opinion.

HARGRAVE, C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and KAUGER, JJ., concur.

OPALA, V.C.J., dissents.

OPALA, Vice Chief Justice, dissenting.

The court today reverses the Oklahoma Tax Commission's [OTC's] assessment of additional franchise taxes against the Tulsa Tribune Company [Tribune] and remands the cause for further proceedings.

I am unable to join in this pronouncement. I would dismiss this appeal as having been mooted by OTC's admitted midappeal withdrawal of its contested assessment and would order that OTC pay Tribune's appeal-related counsel fees and litigation expenses. The issue sought to be resolved is no longer part of a lively "case or controversy" between antagonistic demands. We are wasting valuable government resources on resolving a controversy that is no longer viable.

## I

## MATERIAL MIDAPPEAL DEVELOPMENTS

While appellate review is generally confined to the record presented for corrective process, a well-recognized exception permits an appellate tribunal to take cognizance of those facts occurring during the pendency of an appeal which adversely affect the court's capacity to administer effective relief.[1] Rule 7[2] permits this court to receive evidence in favor of or opposition to an appeal's dismissal. By affidavit attached to a dismissal motion the movant can apprise this court of any material midappeal development.[3]

1. See *Lawrence v. Cleveland County Home Loan Auth.*, Okl., 626 P.2d 314, 315 [1981]; *Brown Investment Co. v. Hickox*, Okl., 369 P.2d 807, 808 [1962]; *Carlton v. State Farm Mutual Automobile Ins. Co.*, Okl., 309 P.2d 286, 289–290 [1957]; and *City of Tulsa v. Chamblee*, 188 Okl. 94, 106 P.2d 796, 798 [1940].

2. Rule 7, Rules of the Supreme Court of Oklahoma, 12 O.S.1981, Ch. 15, App. 1, provides: "*All motions*, petitions, applications or suggestions shall contain a brief statement of facts and of the objects thereof, and except in cases where all the facts relied upon are of record in this Court, *shall be supported by affidavit.*" [Emphasis mine.]

3. *Brown Investment Co. v. Hickox, supra* note 1 at 808; and *Carlton v. State Farm Mutual Automobile Ins. Co., supra* note 1 at 289–290.

4. *Westinghouse Elec. v. Grand River Dam Auth.*, Okl., 720 P.2d 713, 720 [1986]; *Lawrence v. Cleveland County Home Loan Auth., supra* note 1 at 316; *Application of Goodwin*, Okl., 597 P.2d 762, 764 [1979]; *Special Indemnity Fund v. Reynolds*, 199 Okl. 570, 188 P.2d 841, 842 [1948];

OTC seeks to have the appeal dismissed for mootness. We are informed by affidavit of the following uncontroverted facts which *occurred after* the contested tax assessment came to be appealed: (a) OTC directed its franchise tax division on September 16, 1986 to withdraw the March 25, 1983 assessment against Tribune; (b) by letter of September 22, 1986 the March 25th assessment was withdrawn; and (c) no protests of additional franchise tax assessments were pending before OTC on October 3, 1986. Tribune, which now has the burden to overcome this midappeal development, tenders no counter-affidavit in response to the dismissal motion.

## II

## EXCEPTIONS TO MOOTNESS DOCTRINE

Oklahoma jurisprudence recognizes but two "escape hatches" from the mootness doctrine—the public-interest[4] and the likelihood-of-recurrence[5] exceptions. Neither of these exceptions is invocable here.

While the question before us presents a controversy over public revenue—and hence arguably is one of public inter-

*Peppers Refining Co. v. Corporation Commission*, 198 Okl. 451, 179 P.2d 899, 901 [1947]; and *Payne v. Jones*, 193 Okl. 609, 146 P.2d 113, 116 [1944]. In *Goodwin, supra* at 764, we said that "[w]henever widespread interest may demand an immediate resolution of some vital public law issue, *no* impediment arising from infirmity in the procedural posture of the case—however well recognized in purely private litigation—will bar our exercise of reviewing power."

5. *Lawrence v. Cleveland County Home Loan Auth., supra* note 1 at 315–316. See also *In re D.B.W.*, Okl., 616 P.2d 1149, 1151 [1980], where an individual had been involuntarily committed to a mental institution and was discharged from the hospital while the appeal from the commitment order was pending. In *D.B.W.* the court, relying on the rationale of *Rex v. Owens*, 585 F.2d 432 [10th Cir.1978] and *Southern P.T. Co. v. Interstate Com. Com.*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 [1911], stated that the case was not moot because the litigant there could be subjected repeatedly to brief periods of involuntary commitment, with each instance evading judicial review.

est [6]—the likelihood of its *recurrence in the same* or in a *substantially similar legal context* is at best one of pure conjecture.

The withdrawn tax assessment covered the years 1982–1983. Reassessment of the tax against Tribune for the same period would be subject to a bar of limitations.[7] OTC's midappeal affidavit states that no tax protest was then pending by any franchise taxpayer. Tribune does not inform us of additional franchise taxes being assessed against other entities or of any pending protests by taxpayers similarly affected. Moreover, Tribune has not shown by counter-affidavit any facts supporting its assertion that OTC is likely to impose the contested tax in the future; neither has it demonstrated that if such a tax assessment were imposed again, the contest could not be fully litigated.[8] In short, Tribune has not met its burden of showing that the issue raised in this appeal retains a residue of viability because it is based on circumstances "capable of repetition, yet evading review." [9]

Because the precise issue tendered here is now time-barred and the likelihood of its recurrence in a substantially similar context is at best conjectural, I would order the appeal dismissed but would direct that OTC pay for Tribune's appeal-related legal services and litigation expenses.[10]

---

**6.** OTC argues that there is neither widespread interest in the resolution of this case nor does the issue have "wide-ranging ramifications" which would characterize the controversy as one of broad public interest. It asserts that only that corporation which "fail[s] to use the 'equity method' of accounting to account for its investments in affiliates and subsidiaries" would be affected. This narrowly framed issue, OTC asserts, does not have far-reaching effect.

Tribune, on the other hand, attempts to refute this statement by directing us to OTC's response to the petition-in-error and its motion to extend briefing time. There, OTC asserts that the issue "would significantly affect other taxpayers" and that it "is of great and far-reaching importance to domestic and foreign corporations doing business in Oklahoma."

**7.** The terms of 68 O.S.1981 § 223(a) provide in pertinent part:

"*No assessment of any tax* levied under the provisions of any state tax law except as provided in the following paragraphs of this section, *shall be made after the expiration of three (3) years* from the date the return was required to be filed or the date the return was filed, whichever period expires the later, and no proceedings by tax warrant or in court without the previous assessment for the collection of such tax shall be begun after the expiration of such period." [Emphasis mine.]

**8.** The Oklahoma Tax Code (68 O.S.Supp.1987 §§ 221 and 68 O.S.1981 § 225) provides for an adequate review of OTC assessments.

The pertinent terms of § 221 are:
"* * * (c) Within thirty (30) days after the mailing of the aforesaid proposed [tax] assessment, the *taxpayer may file* with the Tax Com-

mission a *written protest* under oath, signed by himself or his duly-authorized agent....
\* \* \* \* \* \*
(g) Within a reasonable time after the hearing herein provided for, the Tax Commission shall make and enter an order in writing in which it shall set forth the disposition made of the protest and a copy of such order shall forthwith be mailed to the taxpayer.... The *taxpayer may* within the time and in the manner provided for by Section 225 of this Code, *appeal to the Supreme Court....*" [Emphasis added.]
The terms of § 225 provide in pertinent part:
"(a) *Any taxpayer aggrieved* by any order, ruling, or finding of the Tax Commission directly affecting such taxpayer *may appeal therefrom directly to the Supreme Court of Oklahoma....*" [Emphasis mine.]

**9.** *In re D.B.W., supra* note 5 at 1151; *Southern P.T. Co. v. Interstate Com. Com., supra* note 5, 219 U.S. at 515 and 31 S.Ct. at 283; and *Rex v. Owens, supra* note 5.

**10.** OTC's conduct bears the earmarks of vexatiousness. The agency waited until *after* Tribune had filed its brief-in-chief before attempting to moot the controversy by withdrawing the contested assessment and then moving for dismissal upon that ground. See *City Nat. Bank & Trust Co. v. Owens,* Okl., 565 P.2d 4, 8–9 [1977] and *Moses v. Hoebel,* Okl., 646 P.2d 601, 603 [1982]. Both here and in *Owens* the offending party sought to bring about a controversy's abrupt end by conduct designed to thwart its resolution in due course of a judicial proceeding. The state may no longer be regarded as absolutely protected by sovereign immunity from counsel-fee liability for vexatious or bad-faith litigation conduct of its lawyers or functionar-

---

ies. See *State ex rel. Poulos v. State Bd. of Equal.,* Okl., 646 P.2d 1269, 1274–1275 [1982]. See also the terms of 12 O.S.Supp.1987 § 941(B), an after-enacted statute, whose provisions impose counsel-fee liability on the agency that proceeds without "reasonable basis" or acts in a "frivolous" manner. The provisions of § 941(B), pertinent here, are:

"The *respondent in any proceeding brought before any state* administrative tribunal by any state agency, board, *commission,* depart-

ment, authority or bureau authorized to make rules or formulate orders *shall be entitled to recover against* such *state entity court costs, witness fees and reasonable attorney fees if* the tribunal or a court of proper jurisdiction determines that the *proceeding was* brought *without reasonable basis or is frivolous....* This subsection shall apply to any proceeding before any state administrative tribunal commenced on or after November 1, 1987." [Emphasis added.]