Attorney General Loving has asked that I respond to your request for an opinion addressing, in effect, the following questions:
 1. Where a federally chartered credit union doing business in Oklahoma is permitted to add a particular group to its membership, may a state chartered credit union likewise add a similar group to its membership?
 2. If so, what is the appropriate procedure by which a state chartered credit union may add such a group?
Because you have requested an expedited response to your inquiry and because the answers to your questions depend upon certain factual matters which are not appropriate for consideration in an official opinion, this office has determined that your inquiry should be answered by this informal letter. The discussion that follows is not an official opinion of the Attorney General. Rather, the following opinion is solely that of the undersigned, reached after careful research of the questions presented by your request.
General Background
Credit unions are cooperative, non-profit, financial institutions created for the purpose of promoting thrift among their members and providing a source of credit of members at legitimate rates of interest. 6 O.S. 2001 (1991). Credit unions are either federally or state chartered. Federal credit unions are governed by the National Credit Union Administration Board (the "Federal Board); in Oklahoma state credit unions are governed by the Oklahoma Credit Union Board (the State Board).12 U.S.C.A. 1766 (1993)/6 O.S. 2001.2 (1991).
Eligibility for membership in both federal and state credit unions is limited. Federal law generally restricts membership in federal credit unions to "groups having a common bond of occupation or association, or to groups within a well-defined neighborhood, community or rural district. 12 U.S.C.A. 1759 (1993). Oklahoma law similarly restricts membership in state credit unions. Section 6 O.S. 2007 of title 6 of the Oklahoma Statutes provides as follows:
 "Credit union membership shall consist of the incorporators, and such other persons and incorporated or unincorporated organizations, as may be elected to membership and, as such, shall each subscribe to at least one share of its stock and pay the entrance fee; except that credit union membership shall be limited to groups having a common bond of occupation or association. A central credit union may be organized to which members of existing credit unions operating in accordance with the law of the State of Oklahoma, or of the United States, may belong, and to which credit unions organized and operating under (the laws of) the State of Oklahoma or of the United States may also belong."
(Emphasis supplied).
Thus, under both federal and state law, credit union membership is primarily limited to groups possessing a "common bond" of occupation or association.
In 1980, Attorney General Cartwright issued an opinion addressing the 6 O.S. 2007 membership requirements for state chartered credit unions. In that opinion, A.G.Opin. No. 80-002, the Attorney General recognized the statutory "common bond" requirement and concluded that the State Board "must determine the extent to which a credit union is permitted by 6 O.S. 2007 (1974) to expand its field of membership. The opinion did not, however, set forth specific guidelines for applying the common bond requirement. Rather, it simply listed three factors that the State Board must address in conducting individual proceedings under the Administrative Procedures Act for the purpose of considering applications to expand credit union membership. These factors were (1) the common bond within the present membership of the credit union; (2) the common bond within the new group; and (3) the common bond between the present membership and the new Group. id. Since A.G. Opin. No. 80-002 was issued, the substantive provisions of 6 O.S. 2007 have not been amended.
The "Wild Card" Statute
An unusual provision of Oklahoma's Credit Union Act is 6 O.S. 2023, the so-called "wild card" statute. Section 2023 provides as follows:
 "A credit union chartered under the laws of the State of Oklahoma, the member accounts of which are insured under Title Il of the Federal Credit Union Act, may exercise any of the powers of a federally chartered credit union doing business in this state, until otherwise provided by the Legislature; and provided that the State Credit Union Board may by rule prohibit the exercise of any such power if the Board finds that the exercise thereof will not serve the public convenience and advantage and will not equalize and maintain the quality of competition between state and federal credit unions."
(Emphasis supplied).
In short, 6 O.S. 2023 authorizes state credit unions to exercise any powers which a federal credit union doing business in Oklahoma may exercise, until provided otherwise by the Legislature or the State Board. The provision evinces a clear legislative intent to place state and federally chartered credit unions on an equal competitive footing. The stated purpose for this grant of authority is to "equalize and maintain the quality of competition" between state and federal credit unions. 1. And when considering this purpose, it is important to recall that because credit unions are non-profit entities, any competition must relate primarily to areas other than profit, such as membership.
When A.G.Opin. No. 80-002 was issued, the wild card statute was in existence and, like 6 O.S. 2007, 2023 has not been substantially amended since that time. But the 1980 opinion of the Attorney General did not consider the potential application of 2023 to questions of credit union membership. There is, however, a good reason why the wild card statute was not addressed in that opinion: At the time the opinion was written, federal and state application of the common bond requirement was uniform. At the time, federal policy limited multiple group credit unions to either occupational or associational groups and required that the common bonds within the multiple groups had to be similar.
Subsequent Federal Application of the "Common Bond" Requirement
Shortly after A.G.Opin. No. 80-002 was issued, the Federal Board be an issuing a series of interpretive releases dealing with the membership of federal credit unions. In April of 1982, the Federal Board issued Interpretative Ruling and Policy Statement 821 which authorized credit unions to obtain multiple occupational group charters. In June of 1982, the Board issued Interpretive Ruling and Policy Statement 82-3 which further modified federal membership policy by expanding multiple group charters from occupational" to both "occupational" and associational. Under the revised federal guidelines, credit unions could amend their charters to add new occupational or associational groups provided that each such group had its own common bond; however, it was not required that each group added to credit union membership have the same common bond as present members or that a common bond exist between a new group and the existing credit union membership. The stated purpose for the change in the federal membership policy was o insure the continued availability of credit union services and to enhance the safety and soundness of federal credit unions by permitting limited diversification.
The current statement of federal membership policy is set forth in InterPretative Ruling and Policy Statement 89-1 a PS 89-1 constitutes an amendment to 12 CFR part 701) and became effective on August 28, 1989. This policy provides that with respect to Select Group Additions, a select group of persons seeking credit union service from a multiple group federal credit union must have its own common bond, but the select group's common bond need not be similar to the common bond of the existing federal credit union membership. id. Among the reasons expressed for permitting field of membership modifications were (1) providing credit union access and service to additional clearly defined groups of persons who desire credit union services; (2) diversifying the credit union membership base to promote safety and soundness and to withstand real or potential economic adversities; and (3) expanding the membership base to facilitate an improvement of credit union services to all members. id.
Subsequent Actions of the State Credit Union Board
Based upon the materials accompanying your request and my conversations with representatives of the State Board, it appears that the State Board adopted the expanded federal approach to credit union membership additions. During 1982, the State Board began accepting application for membership additions from state credit unions based upon the expanded federal membership policy. The State Board has, since that time, continuously accepted applications to expand the membership of state credit unions in conformity with the evolving federal guidelines. Over the last decade, hundreds of such applications have been granted affecting hundreds of thousands of credit union depositors.
The State Board's articulated legal basis for adopting the expanded membership policy and granting the applications is the wild card statute, 6 O.S. 1991, 2023. The Board apparently reasoned that because federal credit unions doing business in the State were permitted to add select groups which possessed an internal common bond, but which did not have a common bond with existing membership of the credit union, then state credit unions should under 2023 likewise have the ability to add such select groups. And rather than exercising its discretionary power under 6 O.S. 2023 to prohibit such activities, the State Board has instead promulgated an administrative rule, Rule 180:101-10, which corresponds to the language of the federal membership policy.
Analysis
It is a well-settled rule of law that the construction of an ambiguous or uncertain statute by the administrative agency charged with its enforcement is entitled to the highest respect, especially when the construction is definitely settled and is uniformly applied over a number of years; and that unless the construction is unreasonable, it will not be overturned except for very cogent reasons. Oral Roberts University v. Oklahoma Tax Commission, 714 P.2d 1013
(Okla. 1985). see also, United Airlines Inc. v. State Board of Equalization, 789 P.2d 1305 (Okla. 1990); McCain v. State Election Board, 289 P. 759 (Okla. 1930).
As is evident from the actions of the State Board over the last decade, the Board has adopted an administrative interpretation of 2023 which permits state credit unions to add select groups which possess an internal common bond, but which do not have a common bond with existing membership of the credit union. This policy appears to have been uniformly applied and the State Board has even formally acknowledged the policy by promulgating Rule 180:10-1-10.
And turning to 6 O.S. 2023, one cannot say that the wild card statute is free from ambiguity and uncertainty. The scope of the provision is indeterminate, as is its field of application. The statute simply provides a "me too" directive that permits state credit unions to do what federal credit unions are authorized to do. In the face of such a statute, it is not unreasonable for the State Board to adopt, pursuant to 2023, an expanded membership policy which tracks federal law. This is especially true given that 2023 provides for an administrative check which allows the State Board, in the event the Board deems it appropriate, to limit such membership expansions. Moreover, the State Board's adoption of the broad federal membership criteria is consistent with the underlying policy of 2023 — placing state and federal credit unions on an equal competitive basis.
Accordingly, the State Board's administrative interpretation that 6 O.S. 2023 (1991) permits state credit unions to exercise the power available to federal credit unions doing business in the state to add select groups which possess an internal common bond, but which did not have a common bond with existing membership of the credit union, is entitled to deference and should not be overturned. It is of no consequence that this interpretation is different than the one discussed in A.G.Opin. No. 80-002 because (1) the 1980 opinion did not address the application of 2023; and (2) the interpretation is based upon evolving federal standards which did not exist at the time A.G.Opin. No. 80-002 was issued. Of course, because 2023 allows only a reciprocal exercise of power to do what federal credit unions may do, the scope of the authority to add select groups is limited by the extent of the applicable federal law, unless further limited by action of the State Board.
Procedure for Expanding Membership
The method by which state credit unions may expand their membership base is not specifically set forth in any statute. Accordingly, a credit union may accomplish such a chance either by amending its certificate of incorporation, pursuant to 6 O.S. 2002 (1991), or by amending its bylaws in accordance with 6 O.S. 2006 (1991). In either ease, the credit union must first obtain the approval of the State Board.
In considering such an application, the State Board must first determine whether it is acting in the context of an individual proceeding pursuant to the Administrative Procedures Act. If so, the Board must take appropriate steps regarding notice, right to counsel, final orders, etc. generally, 75 O.S. 310 et seq. In addition, the Board must, in its review, be cognizant of the pertinent legal basis for the application. For example, the three factors discussed in A.G. OPin. No. 80-002 will be relevant only in proceedings arising under 6 O.S. 2007 (1991). The particular findings or determinations which may be required for effective action in any particular ease will depend upon the specific facts and circumstances of the case; accordingly, recommendations regarding such matters are beyond the scope of this discussion.
Conclusion
It is, therefore, the opinion of the undersigned Assistant Attorney General that:
 1. Where a federal credit union doing business in Oklahoma is permitted to add a particular group to its membership, a state chartered credit union may, pursuant to 6 O.S. 2023 (1991), likewise add a similar group to its membership; and
 2. A state chartered credit union may add a group to its membership either by amending its certificate of incorporation, pursuant to 6 O.S. 2002 (1991), or by amending its bylaws in accordance with 6 O.S. 2006 (1991). In either case, the credit union must first obtain the approval of the State Board.
(K. W. Johnston)